**No. 25-20195**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

JENNIFER RAMSEY,
*Plaintiff-Appellant*

*v.*

SAN JACINTO COLLEGE DISTRICT,
*Defendant-Appellee*

---

On Appeal from the United States
District Court, Southern District of Texas,
Houston Division, Civil Action No. 4:23-CV-1719,
The Honorable Richard W. Bennett,
United States Magistrate Judge Presiding

---

**BRIEF OF APPELLANT**

---

**SHELLIST LAZARZ SLOBIN LLP**
Michael Todd Slobin
State Bar No. 24002953
Dorian Vandenberg-Rodes
State Bar No. 24088573
5373 West Alabama, Suite 600
Houston, Texas  77056
(713) 621-2277 (Tel)
(713) 621-0993 (Fax)
**COUNSEL FOR
PLAINTIFF/APPELLANT,
JENNIFER RAMSEY**

## CERTIFICATE OF INTERESTED PERSONS

(1) No. 25-20195, *JENNIFER RAMSEY, Plaintiff-Appellant v. SAN JACINTO COLLEGE DISTRICT, Defendant, Appellee*;

(2) The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.   These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| **Plaintiff-Appellant** | **Defendant-Appellee** |
|---|---|
| Jennifer Ramsey | San Jacinto College District |

| **Counsel for Plaintiff-Appellant** | **Counsel for Defendant-Appellee** |
|---|---|
| Todd Slobin | Paul A. Lamp |
| Dorian Vandenberg-Rodes | Morgan Beam |
| Shellist Lazarz Slobin LLP | Spalding Nichols Lamp Langlois |

 */s/ Michael Todd Slobin*
Michael Todd Slobin
Attorney of Record for Plaintiff-Appellant,
Jennifer Ramsey

ii

## **<u>STATEMENT REGARDING ORAL ARGUMENT</u>**

Plaintiff-Appellant Jennifer Ramsey respectfully requests oral argument in this appeal. Oral argument would significantly assist the Court in understanding the complex factual record, resolving critical disputes regarding decision-maker knowledge and intent, and properly applying the relevant legal standards to Ms. Ramsey's claims of ADA discrimination, ADA retaliation, FMLA retaliation, and FMLA interference.

## **TABLE OF CONTENTS**

Certificate of Interested Persons ................................................................ ii

Statement Regarding Oral Argument ......................................................... iii

Table of Contents ....................................................................................... iv

Table of Authorities .................................................................................... vi

I.      Jurisdictional Statement ................................................................... 1

II.     Statement of Issues .......................................................................... 1

III.    Statement of the Case ...................................................................... 2

        A. Statement of the Facts ................................................................ 2

            1. Ramsey's Stellar 16-Year Employment History with SJC .................... 2

            2. Ramsey's Medical Issues ................................................................ 3

            3. First FMLA Leave and Brain Surgery .............................................. 6

            4. First Act of Retaliation, 11 Days After Ramsey's
               Return from her First Brain Surgery .............................................. 6

            5. Ramsey's Medical Issues Continued ................................................ 7

            6. More Retaliation ............................................................................ 8

            7. Request for Second FMLA Leave for Another Brain Surgery .............. 8

            8. Request for Intermittent FMLA Leave and Retaliation ...................... 9

            9. Communications with Marvel about Ramsey's Disability
               and Ramsey's Request for Additional Accommodations .................... 12

10. Marvel's Clear Documentation of Ramsey's Medical Issues and Her Complaints of Discrimination .................................................13

11. Decision to Terminate.........................................................................14

12. Dr. Hellyer Knew About Ramsey's Medical Issues and Accommodations Requests.....................................................15

B. Procedural History and District Court Decision .....................................17

IV.    Summary of the Argument..............................................................................17

V.    Argument .........................................................................................................20

A. Standard of Review ................................................................................20

B. The district court erred in granting summary judgment on Ramsey's ADA discrimination claim. .................................................21

1. Ramsey established a prima facie case of disability discrimination...................................................................21

2. Ramsey raised a genuine issue of fact regarding whether SJC's reason for termination was a pretext for discrimination .................................................................25

C. The district court erred in granting summary judgment on Ramsey's ADA retaliation claim.........................................................34

D. The district court erred in granting summary judgment on Ramsey's FMLA retaliation claim ... .................................................38

E. The district court erred in granting summary judgment on Ramsey's FMLA interference claim .................................................43

VI.    Conclusion and Prayer for Relief ..................................................................44

Certificate of Service ....................................................................................................46

Certificate of Compliance .............................................................................................47

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albrechsten v. Bd. Of Regents of Univ. of Wisc. Sys.*,
309 F.3d 433 (7th Cir. 2002) ................................................................. 40

*Burton v. Freescale Semiconductor, Inc.*,
798 F.3d 222 (5th Cir. 2015) ..................................................... 27, 28, 29

*Caldwell v. KHOU-TV*,
850 F.3d 237 (5th Cir. 2017) ...................................... 20, 26, 27, 38, 42, 43

*CQ, Inc. v. TXU Mining Co.*,
565 F.3d 268 (5th Cir. 2009) ................................................................. 40

*Daigle v. Liberty Life Ins. Co.*,
70 F.3d 394 (5th Cir. 1995) .................................................................. 21

*Eastern Concrete Materials v. Ace American Insurance Co.*,
948 F.3d 289 (5th Cir. 2020) ................................................................ 31

*EEOC v. LHC Grp., Inc.*,
773 F.3d 688 (5th Cir. 2014) ..................................................... 21, 22, 23, 24

*Feist v. La., Dept. of Justice, Office of the Atty. Gen.*,
730 F.3d 450 (5th Cir. 2013) ................................................................ 34

*Gee v. Principi*,
289 F.3d 342 (5th Cir. 2002) ................................................................ 32

*Haire v. Board of Sup'rs of La. State Univ. Agricultural & Mech. Coll.*,
719 F.3d 356 (5th Cir. 2013) ................................................................ 26

*Hunt v. Rapides Healthcare Sys., LLC*,
277 F.3d 757 (5th Cir. 2001) ................................................................ 38

*January v. City of Huntsville,*
   74 F.4th 646 (5th Cir. 2023) ................................................................. 36

*Laxton v. Gap Inc.,*
   333 F.3d 572 (5th Cir. 2003) ................................................................. 32

*LeMaire v. La. Dep't of Transp. & Dev.,*
   480 F.3d 383 (5th Cir. 2007) ................................................................. 42

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ................................................................... 25, 38

*Minter v. Great Am. Ins. Co.,*
   423 F.3d 460 (5th Cir. 2005) ................................................................. 20

*Nat'l Railroad Passenger Corp. v. Morgan,*
   536 U.S. 101 (2002) ................................................................. 24

*Ragas v. Tennessee Gas Pipeline Co.,*
   136 F.3d 455 (5th Cir. 1998) ................................................................. 39

*Reeves v. Sanderson Plumbing Prods., Inc.,*
   530 U.S. 133 (2000) ....................................... 20, 22, 28, 29, 31, 37, 40

*Rhodes v. Guiberson Oil Tools,*
   75 F.3d 989 (5th Cir. 1996 *en banc*) ...................................... 26, 39, 41

*Richardson v. Monitronics Intl, Inc.,*
   434 F.3d 327 (5th Cir. 2005) ......................................................... 22, 38

*Sandstad v. CB Richard Ellis,*
   309 F.3D 893 (5th Cir. 2002) ......................................................... 26, 39

*Staub v. Proctor Hospital,*
   562 U.S. 411 (2011) ............................................................. 32, 33, 37

*Stepanischen v. Merchants Despatch Transportation Corp.,*
   722 F.2d 922 (5th Cir. 1983) .................................... 33, 34, 37, 40, 41

**Statutes**

28 U.S.C. § 1291 ................................................................................................ 1

28 U.S.C. § 1331 ................................................................................................ 1

29 U.S.C. § 2601 ................................................................................................ 1

42 U.S.C. § 12101 .............................................................................................. 1

42 U.S.C. § 12203(a) ........................................................................................ 35

**Rules**

Fed. R. App. P. 4(a)(1)(A) ................................................................................. 1

Fed. R. App. P. 32(a)(5) .................................................................................. 47

Fed. R. App. P. 32(a)(6) .................................................................................. 47

Fed. R. App. P. 32(a)(7)(B) ............................................................................. 47

Fed. R. App. P. 32(f) ....................................................................................... 47

Fed. R. Civ. P. 56 ........................................................................................... 41

Fed. R. Civ. P. 56(a) ....................................................................................... 20

Fed. R. Civ. P. 56(c) ....................................................................................... 37

## I.    JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the…laws…of the United States."  Plaintiff's action against Defendant was brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Family and Medical Leave Act, ("FMLA") 29 U.S.C. § 2601, *et seq*.  ROA.46. The unlawful employment practices were committed within the jurisdiction of the United States District Court of the Southern District of Texas–Houston Division. ROA.46.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which confers appellate jurisdiction over final decisions of the district courts.  On April 30, 2025, the district court granted summary judgment in favor of Defendant and entered final judgment disposing of all claims.  ROA 1122.  Plaintiff timely filed a notice of appeal on May 19, 2025, within the 30-day period prescribed by Federal Rule of Appellate Procedure 4(a)(1)(A).  ROA 1129-1130.

## II.    STATEMENT OF THE ISSUES

1. Whether the district court erred in granting summary judgment in favor of Defendant on Plaintiff's ADA discrimination claim.

2. Whether the district court erred in granting summary judgment in favor of Defendant on Plaintiff's ADA retaliation claim.

3. Whether the district court erred in granting summary judgment in favor of Defendant on Plaintiff's FMLA retaliation claim.

4. Whether the district court erred in granting summary judgment in favor of Defendant on Plaintiff's FMLA interference claim.

### III.   STATEMENT OF THE CASE

Plaintiff-Appellant Ramsey appeals the district court's grant of summary judgment on her ADA discriminatory discharge, ADA retaliation, FMLA retaliation, and FMLA interference claims, all arising out of her unlawful termination from SJC on December 3, 2021.

### A. Statement of the Facts

#### 1. Ramsey's Stellar 16-Year Employment History with SJC.

Ramsey began working for SJC on September 1, 2005. ROA.729. During her 16-year tenure, she was promoted four times and consistently received positive performance reviews, with accolades such as "Meets Requirements," "Exceeds Requirements," "Notable Contribution," "Valuable Contribution," and "Notable." ROA.729, 737-887.   In 2013, Ramsey was promoted to Manager Learning Technology, and her leader became Gabriel R. Rodriguez ("Rodriguez"), Director of Talent Development. ROA.729. Ramsey worked under Rodriguez until February 2021 and continued to receive positive reviews from him.   ROA.796-873.

Rodriguez nominated Ramsey for the *COVID-19 Hero Award*, and she received this award in 2021. ROA.729.

At the end of February 2021, Ronald Sanchez ("Sanchez"), Vice-President, Organizational and Talent Development, became Ramsey's leader. ROA.992. Thereafter, on July 1, 2021, Kam Marvel ("Marvel"), Director of Talent, Technology and Support, became Ramsey's leader. ROA.732, 926. In Ramsey's 2020-2021 Performance Review, covering the period of April 27, 2020, through April 23, 2021, Sanchez commented, "Jennifer, you rated yourself valuable, and the HR validation committee agreed to the valuable rating." ROA.886-887. Of note, Marvel and Vickie Del Bello (CS Admin) are listed as the reviewers. ROA.874. The review is significantly positive, wherein Ramsey received thirteen "Consistently" ratings out of fourteen categories and an overall rating of "Valuable." ROA.884-887. There was no mention of "performance deficiencies" in the review. ROA.884-887.

### 2. Ramsey's Medical Issues.

Between 2018 and 2021, Ramsey began increasingly suffering symptoms of a severe medical condition, a double-brain herniation, which impacted her vision, hearing, balance, and other cognitive functions. ROA.729. In 2018, Ramsey was diagnosed with photophobia. ROA.729. The glare of fluorescent lights caused Ramsey pain; it was difficult for her to focus, her equilibrium was off, and she could not drive. ROA.729. In 2020, Ramsey's medical condition escalated, and she was

diagnosed with migraine headaches. ROA.730. She learned that she would need a double brain surgery (two separate brain surgeries) to address her medical issues. ROA.730. Ramsey had her first brain surgery in November 2020, part of a two-step process, with another brain surgery to be conducted in the future. ROA.730. From November 2020 through Ramsey's termination, she suffered the effects of her medical condition. ROA.730. She was in constant pain and ultimately had to have another brain surgery in July 2021, which was not part of the two-part brain surgery originally scheduled. ROA.730. There were times that Ramsey could not make it to work because she was experiencing extreme pain and/or a migraine. ROA.730.

From the fall of 2020 and through 2021, Ramsey suffered from visual and hearing issues as well as a myriad of migraines and brain fluid leakage. ROA.730. Ramsey requested accommodations from the Facilities department, Rodriguez, Sanchez, Vicki Del Bello, and Tracy Willis, Benefits Manager, which were ignored or denied. ROA. 730, 976 (Ramsey Dep. 169:2-15, 169:21-15, 170:1-5). Specifically, Ramsey requested that her fluorescent bulbs be replaced with non-fluorescent alternatives and requested reduced lighting when she attended meetings. ROA.730, ROA.974-975 (Ramsey Dep. 164:22-25, 165:18-25, 166:1-12, 168:16-21). However, nothing was done about her requests. ROA.730, 976 (Ramsey Dep. 169:21-25, 170:1-3). She also requested reasonable accommodations to work from home, which were denied. ROA.730. So that Ramsey could work, she brought in

4

her own table lamps, floor lamps, and white paper draped over the glass panels of her office to shield her from the hallway light. ROA.730, 976 (Ramsey Dep. 169:16-18). In addition, sunglasses became necessary, and she often wore them to meetings. ROA.730. Ramsey requested that Rodriguez, Sanchez, and other leadership put all deadlines and due dates in writing due to her diminished short-term memory. ROA.730.

In 2021, after Ramsey brought in her own lamps and soft bulbs because SJC failed to respond to her request for accommodations, Sandra Ramirez, Vice Chancellor of Human Resources, remarked that Ramsey appeared "unapproachable" because her office door was shut and her office was dark. ROA.730-731, 976 (Ramsey Dep. 169:16-20, 171:2-18, 172:13-16). Rodriguez and Sanchez both relayed Ramirez's remarks to Ramsey, and criticized and reprimanded Ramsey for her actions. ROA.731, 976 (Ramsey Dep. 170:1-5, 170:10-24, 171:2-18). In addition, Ramsey requested a headset with volume control because she could not hear well as a result of her medical condition.[1] ROA.731, 974 (Ramsey Dep. 164:24-25), ROA.978 (Ramsey Dep. 179:18-25, 180:9-23). SJC refused or ignored her request for accommodation, so Ramsey purchased her own headset with volume control. ROA.731.

---

[1] Ramsey's physician, Dr. Yoon, submitted medical documentation to SJC detailing her hearing loss and equilibrium challenges. ROA.730.

### 3. First FMLA Leave and Brain Surgery.

On November 18, 2020, Ramsey went out on approved FMLA leave for her first brain surgery—a life-altering operation for brain herniation and eardrum creation. ROA.730, 995-1018. On December 10, 2020, Ramsey submitted a return-to-work letter stating that, following post-operative procedures related to COVID-19, she would require work-from-home accommodations until December 28, 2020. ROA.888. In response, SJC approved only a partial accommodation, allowing Ramsey to work from home 50% of the time. ROA.889. SJC required Ramsey to use her own leave time for the remaining days. ROA.889.

On December 31, 2020, Ramsey received a letter from her physician clearing her to return to work with no restrictions on January 4, 2021. ROA.890. As directed by Human Resources (HR), Ramsey provided this letter to SJC on January 4, 2021, her first day back from brain surgery. ROA.731, 891-892. She also updated SJC leadership and the benefits department regarding her medical condition. ROA.731.

### 4. First Act of Retaliation, 11 Days After Ramsey's Return from her First Brain Surgery.

On January 15, 2021, less than two months after Ramsey went out on FMLA leave and eleven days after she returned to work from her first brain surgery, Rodriguez issued Ramsey a Letter of Expectations. ROA.893. *This was Ramsey's first write-up in her 16-year career at SJC*. ROA.731. It was the beginning of a sudden and unprecedented campaign against Ramsey. ROA.731. Rodriguez

claimed that Ramsey, an exempt employee, had arrived "well after" her 8:00 a.m. start time on January 13th and 15th, as well as "many times over the past several months." ROA.893.  Ramsey disputed this, noting that she had undergone her first surgery on November 18, 2020, and was on FMLA leave until her return on January 4, 2021. ROA.731, 894. Thus, it would have been impossible to be late if she were out on protected medical leave.[2]

### 5.  *Ramsey's Medical Issues Continued.*

By March 2021, Ramsey's health deteriorated further, forcing the need for a second brain surgery in July 2021.  ROA.731.  Her brain was leaking, she was having issues with her hearing and vision, and all of her medical issues were worse. ROA.731.  Ramsey communicated her medical issues and need for a second brain surgery to leadership, including Sanchez and Del Bello.  ROA.731.  She requested additional FMLA leave, which SJC denied on May 28, 2021, because of insufficient information.[3]  ROA.731.

---

[2] On February 2, 2021, Ramsey emailed Sanchez to formally dispute and request a review of Rodriguez's Letter of Expectations. ROA.896. She asserted that the letter contained "untrue and misleading statements, inaccurate information, and vague improvement expectations." ROA.896. Ramsey received no response from Sanchez regarding her request. ROA.731.

[3] The Benefits department did not process the FMLA documentation submitted appropriately, overlooking the conditions and associated need for leave. ROA.731-732. Ramsey was struggling to function on a daily basis due to the increasing medical conditions. ROA.731. She obtained a letter from another doctor to detail the current medical situation and submitted it to leadership because of the lack of understanding.  ROA.732. The leave was later approved.  ROA.733.

### 6. *More Retaliation.*

On June 3, 2021, Ramsey emailed Sanchez that she had "mismanaged" her time while working at home and would arrive late to the office. ROA.898. This incident was related to Ramsey's medical condition. ROA.732. Later that day, and six days after Ramsey was denied additional FMLA leave, Sanchez issued a corrective action notice, requiring Ramsey to improve her "performance and behavior immediately." ROA.255-256. This notice included a reprimand for not submitting her May 2021 leave report on time, which Ramsey told Sanchez she forgot to submit due to her medical condition.[4] ROA.955-956 (Ramsey Dep. 88:19-25, 89:1-19).

### 7. *Request for Second FMLA Leave for Another Brain Surgery.*

On June 20, 2021, Ramsey received and submitted SJC's FMLA form for a second brain surgery, which detailed her medical history, including hospitalizations, treatments by her physician, and the expected time needed for full recovery. ROA.732, 901-904. The form highlighted Ramsey's ongoing health challenges, specifically stating:

> "Ms. Ramsey has a history of encephalocele that was previously repaired, however due to persistent increased pressure, she developed a CSF leak and recurrent small encephalocele, now needing a middle fossa

---

[4] Sanchez also contacted Ramsey via text to work while she was out on approved FMLA leave from June 15-17, 2021 for bed rest associated with a spinal tap to assess the brain fluid level before her second brain surgery could be completed. ROA.732, 899-900.

craniotomy/mastectomy combined approach for repair. She will need close observation to avoid recurrence." ROA. 732, 903.

The form also stated that Ramsey would have periods of incapacity from July 27, 2021, to approximately August 1, 2021, for surgery and hospitalization, would need four to six weeks of recovery post-surgery and multiple visits to follow up the first year after surgery, more frequently in the first three months. ROA.903-904. In addition, the form specified that Ramsey's expected time of full recovery was one year. ROA.904. On June 30, 2021, Ramsey received SJC's FMLA Designation Notice, which confirmed that her FMLA request had been approved. ROA.732, 905-907.

On July 1, 2021, ten days after Ramsey requested her second FMLA Leave, Sanchez emailed Ramsey to let her know her new supervisor would be Marvel, and he addressed Ramsey's need to improve certain deficiencies. ROA.908. Ramsey sent text messages to Marvel about her medical condition's impact before her second brain surgery on: July 7, 2021, July 12, 2021; July 14, 2021; July 21, 2021, and July 26, 2021. ROA.732, 1052.

### 8. *Request for Intermittent FMLA Leave and Retaliation.*

Following Ramsey's second brain surgery, on August 18, 2021, Ramsey's physician submitted FMLA forms for intermittent FMLA leave to SJC. ROA.909-913. The form detailed Ramsey's diagnoses, including migraines, and noted that a severe CSF leak was causing her symptoms. ROA.901-913. The form emphasized

that Ramsey could perform her job despite these challenges. ROA.912. The form specifically requested a part-time or reduced work schedule (if necessary) upon her return to work post-surgery, 2-4 hours per day, 1-2 days per week, from August 21, 2021, through July 1, 2022. ROA.733, 913.

On August 21, 2021, Ramsey received a Work Release Form clearing her to return to work on September 7, 2021, without any restrictions. ROA.914. Upon her return from FMLA leave on September 7, 2021, she encountered significant issues with the Cornerstone Learning Management System (LMS), which was in a disorganized state and was not attributable to Ramsey. ROA.733. Errors in the Full-Time Faculty and Part-Time Faculty Annual Compliance Curriculum system deployments required her immediate attention. ROA.733. Additionally, leadership requested urgent reporting on faculty transcripts for curriculum compliance, further complicating her workload. ROA.733. As leadership continued to prioritize tasks in an ad-hoc manner, many of Ramsey's other duties were postponed, causing her to miss expected deadlines. ROA.733. When Ramsey raised concerns about the overwhelming and conflicting priorities, Marvel told her that her job duties and workload were being evaluated. ROA.733, 915.

On September 10, 2021, SJC officially approved Ramsey's Intermittent FMLA leave, retroactive from June 28, 2021, through September 7, 2021. ROA.916.

The form further stated that Ramsey was eligible for a total of 480 hours of leave within a rolling 12-month period, with 200 hours remaining for the year. ROA.916.

On September 18, 2021, SJC approved Ramsey's request for intermittent FMLA leave. ROA.917. The FMLA Designation Notice form stated, "*Per the FMLA certification completed by your physician, you are approved for 2 to 4 hours per day for appointments, up to 2 times per week, but no more than 2 times per month. Your intermittent leave is approved through July 1, 2022.*" ROA.917. Willis sent an email to Marvel and Ramsey confirming the approved intermittent FMLA leave. ROA.921.

On September 21, 2021, Ramsey emailed Marvel, stating that she was experiencing a challenging morning due to a migraine, which impacted her ability to provide a precise arrival time to work. ROA.733.

On October 7, 2021, Ramsey, suffering from her medical condition, apologized to Marvel for being late, explaining, *"I have been attempting to compose this message for 42 minutes. I have woken with a migraine this morning."* ROA.922. Ramsey mentioned in this correspondence that her prescription was ineffective after the first dose. ROA.922.

That same day, October 7, 2021, SJC revised Ramsey's request for intermittent FMLA leave. ROA.923-925. The revised FMLA Designation Notice

added, "You are also approved for up to two episodes per month, 4 to 8 hours per episode, for migraine flareups." ROA.923.

On November 4, 2021, less than 30 days later, with knowledge of Ramsey's medical condition and approved intermittent FMLA leave through July 1, 2022, Marvel issued Ramsey a Final Corrective Action Notice. ROA.1050-1051. Marvel claimed that Ramsey had raised her voice. ROA.1051. The document contained a statement attributed to Ramsey, "Why do I have to accommodate everyone? Nobody accommodates me." ROA.1051. This statement omitted what Ramsey had expressed just moments before: "I have an issue with my hearing," attempting to explain why her voice was raised. ROA.734, 930, 1051. This critical context was missing from SJC's self-serving documentation. ROA.734. Marvel and others at SJC were fully aware of Ramsey's medical condition and accompanying hearing issues, but this information was intentionally excluded from the Final Corrective Action Notice. ROA.734.

### 9. Communications with Marvel about Ramsey's Disability and Ramsey's Request for Additional Accommodations.

In September, October, and November 2021, Ramsey was in constant communication with Marvel about her disability and requests for accommodations. ROA.734, 1053.

On November 19, 2021, Marvel and Ramsey met. ROA.734. In the meeting, Ramsey told Marvel that she had a headset with volume control, which was good.

ROA.734. However, the headset was pushing against her head, causing pain and pressure in her brain, so she needed a Bluetooth earpiece or another type of listening-type of accommodation. ROA.734. She also requested accommodations, citing difficulties with virtual meetings due to brain pressure and hearing issues. ROA.734. She expressed the need for assistance during online meetings because she struggled to hear and communicate due to low volume levels. ROA.734, ROA.974 (Ramsey Dep. 163:9-25), ROA.979 (Ramsey Dep. 181:1-14). Following the meeting, Marvel emailed Ramsey to inform her that he had contacted Willis "related to the possibility of an accommodation that [Ramsey] mentioned in [their] morning tag-up." ROA.931-932. On November 29, 2021, Willis forwarded the email to Ramsey and sent her an ADA form for completion by a physician. ROA.734, 931. Ramsey was terminated the same week, which did not allow for enough time to submit the paperwork to Willis. ROA.734, ROA.980-981 (Ramsey Dep. 188:23-25, 189:1-4).

### 10. Marvel's Clear Documentation of Ramsey's Medical Issues and Her Complaints of Discrimination.

On November 21, 2021, Marvel documented a conversation he had with Ramsey. ROA.983. In his performance discussion notes, he handwrote (comments from Ramsey), "*I had a brain injury and written up 3 times*." ROA.983. Marvel's notes also reflect Ramsey stating, "*8 months, no empathy*," "*Talked with HR professional/other professionals and I have a case with EEOC and TWC*," and

further, "*this is wrong*."[5]  ROA.983.  Ramsey complained to Marvel that she was being discriminated against based on her medical condition and informed him that she had a basis for claims covered by the EEOC and TWC.  ROA.983, 734-735.

### 11. Decision to Terminate: Nine Days after Ramsey Complained About Her Medical Issues and Retaliation.

On December 1, 2021, nine days after Ramsey's complaints on November 21, Marvel spoke with Del Bello, Vice President Human Resources, and recommended Ramsey's termination.  ROA.928.  That same day, Del Bello emailed Ramirez requesting Ramsey's termination, omitting any reference to Ramsey's FMLA, ADA requests, or medical conditions.  ROA.984-985.  Ramirez forwarded the email to Dr. Brenda Hellyer ("Hellyer"), Chancellor of SJC, for approval.  ROA.984-985.  Del Bello was aware of Ramsey's medical condition; she had several conversations with Ramsey about her medical issues and requests for accommodations, but intentionally left this information out of the letter. ROA.730-731. SJC leadership (Hellyer, Marvel, Ramirez, and Del Bello) failed to acknowledge any of Ramsey's medical issues in the termination process. ROA.984-985, 988-989.

In Marvel's declaration, he claims that he did not know of Ramsey's disability or that Ramsey had requested accommodations from SJC at the time he made the recommendation to terminate her employment.  ROA.928. *These statements in*

---

[5] The actual quote from Ramsey was, "[I] [t]alked with HR professional/other professionals and they said that I should file have a case with EEOC and TWC." ROA.734.

*Marvel's declaration are false.* Ramsey told Marvel about her disability on a number of occasions via email, text messaging, and in-person conversations in July 2021, and between September, October, and November of 2021. <mark>ROA.732</mark>, <mark>734</mark>, <mark>1052-1053</mark>. She also requested accommodations from Marvel, as reflected in his November 19, 2021 email to Ramsey in which he documented his discussion with her about her request for an accommodation. <mark>ROA.735</mark>, <mark>932</mark>.

### 12. Dr. Hellyer Knew about Ramsey's Medical Issues and Accommodation Requests but Approved her Termination Anyway.

Hellyer approved the recommendation for Ramsey's termination. <mark>ROA.986</mark>. On December 3, 2021, Marvel sent Ramsey a termination letter. <mark>ROA.988-989</mark>. On December 10, 2021, as part of SJC's appeal process, Ramsey submitted an email with attachments entitled "Employment Termination Appeal" to Amanda Fenwick ("Fenwick"). <mark>ROA.735</mark>, <mark>990</mark>. She cc'd Michelle Walker, Ramirez, and Del Bello, and **bcc'd Hellyer** on the email to Fenwick. <mark>ROA.735</mark>, <mark>990</mark>, <mark>1048-1049</mark>.

Ramsey wrote:

*San Jacinto College Leadership,*

*As for most of us, these past couple of years have been a little rough for me. Quite a few of the employees who have been with the college for a while know me, I had worked for San Jacinto College over 16 years until last week. This last year was life altering for me. After multiple misdiagnoses and treatment of individual symptoms by different specialists, I was finally correctly diagnosed with a **double brain herniation in the mastoid cavity**. I had my **first surgery in November 2020**. Unfortunately, that surgery caused an unforeseen urgent condition. I underwent my **second brain surgery in July 2021 for a***

*CSF leak*.  *There are a variety of symptoms that accompany these conditions.  It was not my desire to have a **brain injury** or continue to feel the ramifications. If there was an observable change, my hope would be that there is a plan in situations like this for employees. **Possibly somehow Human Resources would find the appropriate assistance for a type of intervention delivered with empathy and understanding**.  At this time, all that can be said in my situation is that **I had never received a write-up my entire career with the college, until 2021**.  This entire process has been disheartening, to say the least.*

*With that said, please accept this written communication with the attached documentation in alignment with Procedure 4-15: Termination or Demotion of Non-Contractual Employees Review Process of five (5) working days of my termination date of December 3, 2021*.  ROA.735, 990.

On January 13, 2022, Hellyer issued Ramsey a letter entitled "Response to Secondary Request of Termination Decision." ROA.991. In this letter, Hellyer upheld the decision to terminate Ramsey's employment, effective December 3, 2021.[6]  ROA.991.  In her affidavit, Hellyer states that at the time she approved the recommendation to terminate Ramsey, she did not know that Ramsey had requested or taken FMLA leave, had a disability, or had requested accommodations from SJC. ROA.987.  Hellyer's affidavit was false.  ***Hellyer was aware of Ramsey's medical condition and requests for accommodations prior to affirming Ramsey's termination***.  ROA.990, 1048.

---

[6] Hellyer's letter to Ramsey states that Fenwick "conducted a thorough review of the matter," considered the statement Ramsey provided, and communicated her findings to Hellyer. ROA.991.

## B. Procedural History and District Court Decision

Ramsey filed her First Amended Complaint against SJC on June 30, 2023, asserting that SJC denied her reasonable accommodations for her disability, and terminated her employment because of her disability and requests for accommodations in violation of the ADA. ROA.45. In addition, Ramsey asserted that SJC interfered with her taking intermittent medical leave to which she was entitled under the FMLA and terminated her in retaliation for exercising her right to take medical leave in violation of the FMLA. ROA.45. On October 11, 2024, SJC filed its First Amended Motion for Summary Judgment seeking to dismiss all of Ramsey's claims. ROA.391. On November, 1, 2024, Ramsey filed her Response to Defendant's First Amended Motion for Summary Judgment. ROA.693. On November 15, 2024, SJC filed its Reply to Plaintiff's Response to Defendant's First Amended Motion for Summary Judgment. ROA.1062. On April 30, 2024, the district court granted summary judgment on all of Ramsey's claims and dismissed her First Amended Complaint with prejudice. ROA.1122.

## IV.    SUMMARY OF THE ARGUMENT

SJC discriminated against Ramsey in violation of the ADA and FMLA. Ramsey was a 16-year employee with SJC who consistently received positive reviews and accolades, even during the year she was terminated. The only thing that changed for Ramsey was that she had two brain surgeries in less than a year, and she

17

was scheduled for another brain surgery due to a medical condition that impacted her health in many ways – all of which she repeatedly communicated to SJC leadership prior to her termination.

In response to Ramsey's continued efforts to work through her pain with accommodations and address her medical issues with FMLA leave, and then intermittent FMLA leave, SJC began a sudden and unprecedented campaign to document Ramsey's "deficiencies" to justify a decision that had already been made – and terminated her while on protected FMLA intermittent leave. The timing of Ramsey's write-ups and termination, which occurred right after she sought or took FMLA leave or discussed her medical needs with leadership, further suggest a discriminatory or retaliatory animus. Most troubling is that Marvel and Hellyer made false and misleading statements in their affidavits, claiming that they did not have knowledge of Ramsey's disability or that she had requested accommodations prior to the termination decision. These statements are demonstrably false and further call into question the veracity of SJC's alleged reason for Ramsey's termination.

In granting summary judgment on all of Ramsey's claims, the district court failed to view the evidence in the light most favorable to Ramsey, used incorrect legal standards, ignored critical evidence creating fact issues, and went to extraordinary lengths to rule in favor of SJC. The district court erred in granting

18

summary judgment on Ramsey's ADA discriminatory discharge claim because (1) she was not required to address whether she was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group to establish a prima facie case; and (2) she raised a fact issue regarding whether SJC's proffered reason for terminating her ("performance deficiencies") was a pretext for discrimination by demonstrating that SJC's alleged reason was false and motivated by discriminatory animus. In addition, Ramsey established pretext under the "Cat's Paw" theory of liability because she put forth evidence that Marvel exercised sufficient leverage over Hellyer in the termination decision for his discriminatory animus to be imputed to Hellyer.

The court further erred in granting summary judgment on Ramsey's ADA retaliation claim because Ramsey specified SJC's retaliatory acts in her Response brief and raised a fact issue as to whether SJC's proffered reason for terminating her was in retaliation for requesting accommodations and bringing a complaint about disability discrimination to Marvel, who recommended her termination nine days after she complained.

In addition, the court erred in finding that Ramsey failed to create an issue of material fact regarding pretext on her FMLA retaliation claim. Ramsey offered sufficient evidence to raise a fact issue regarding whether her request for FMLA leave was a motivating factor in her termination, and the court refused to consider

any of her evidence. Finally, the court erred in granting summary judgment on Ramsey's FMLA interference claim because she demonstrated that SJC interfered with her protected FMLA intermittent leave by unlawfully terminating her employment, which clearly prejudiced Ramsey. Material fact issues exist in this case, and Ramsey's claims should be tried to a jury. The district court's grant of summary judgment should be reversed, and the case should be remanded for further proceedings.

## V.     ARGUMENT

### A. Standard of Review

A district court's award of summary judgment is reviewed de novo. *Minter v. Great Am. Ins. Co.,* 423 F.3d 460, 464-65 (5th Cir. 2005). Summary judgment is appropriate only if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the Court "must review the record taken as a whole," and "must draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted). Factual inferences must be viewed in the light most favorable to the nonmoving party. *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017). In addition, a court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151.

**B. The district court erred in granting summary judgment on Ramsey's ADA discrimination claim.**

**1. Ramsey established a prima facie case of disability discrimination.**

The district court found that Ramsey failed to establish a prima face case of disability discrimination under the ADA because she did not address whether "she was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group." ROA.1112, 1115 (citing *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)). However, evidence of the treatment of similarly situated employees outside the protected group is not required to establish a prima facie case of disability discrimination. *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 695-96 (5th Cir. 2014). Rather, to establish a prima facie case of disability discrimination, the plaintiff must merely demonstrate that she (1) has a disability, (2) is qualified for the job, and (3) was subject to an adverse employment action on account of her disability. *Id.* at 695 (rejecting *Daigle*'s requirement of a fourth prong of evidence of similarly situated employees outside the protected group, noting that such evidence is best understood as one possible way to prove nexus between the employee's disability and termination).

Despite the fact that both Ramsey and SJC cited to *EEOC v. LHC Grp., Inc.* for the three elements of a prima facie case of disability discrimination, agreeing that the fourth prong cited in *Daigle* was unnecessary, the district court went out of its

21

way to dismiss Ramsey's discrimination claim at the summary judgment stage and held Ramsey to an unnecessarily high burden of proof by requiring evidence of this fourth prong to establish a prima face case. ROA.408, 715, 1112, 1115. *EEOC v. LHC Grp.*, 773 F.3d at 695. Notably, the court cited to *EEOC v. LHC Grp.* for the third element of the prima face case, but then sharply turned to *Daigle* and its progeny to find that the fourth prong was necessary. ROA.1115. In doing so, the court not only failed to view the evidence in the light most favorable to Ramsey, it bent over backwards to skew the evidence in SJC's favor. ROA.1115. The court erred in finding that Ramsey failed to establish a prima facie case of disability discrimination on this basis. *Reeves*, 530 U.S. at 150.

In analyzing Ramsey's prima facie case, the court found that (1) Ramsey's declaration created a fact issue as to whether she has a disability, (2) her favorable performance reviews confirmed that she was qualified for her job, and (3) she suffered an adverse employment action (termination). ROA.1112-1115. As to the third prong of the prima facie case, the district court did not address whether Ramsey was terminated on account of her disability.[7] ROA.1115. However, Ramsey presented sufficient evidence to create a genuine dispute of material fact regarding

---

[7] SJC also failed to address the third prong of the prima facie case in its First Amended Motion for Summary Judgment. ROA.408. Thus, any argument that Ramsey failed to meet this prong of the prima facie case is waived on appeal. *Richardson v. Monitronics Intl, Inc.*, 434 F.3d 327, 335 (5th Cir. 2005) (defendant waived argument that plaintiff could not establish a prima facie case of discrimination on appeal where its motion for summary judgment did not address the elements of the prima face case).

22

this causal nexus. Specifically, the chronology of the three write-ups cited in Ramsey's termination letter, and the fact that they contained false statements or reprimands for alleged performance issues her supervisors knew were related to her medical condition, raise a genuine dispute of material fact regarding whether Ramsey was terminated on account of her disability. ROA.731-732, 734, 893. *See EEOC v. LHC Grp.*, 773 F.3d at 701 (fact that plaintiff's supervisors criticized her performance only after her seizure and accompanying memory struggles, and criticisms were exaggerated, unfounded, or fabricated raised genuine dispute of material fact regarding whether plaintiff was fired on account of her disability).

Ramsey was employed with SJC for sixteen years with exceptional performance evaluations, multiple promotions, and various recognition awards, and she was never written up until January 15, 2021, eleven days after her return to work from her first brain surgery. ROA.729, 731. In this first write-up, Rodriguez made false statements about Ramsey's tardiness and accused her of being late to work during the time that she had been out on protected FMLA leave for brain surgery. ROA.893. On June 3, 2021, six days after Ramsey was denied additional FMLA leave, Sanchez issued Ramsey a second corrective action notice requiring her to "improve [her] performance and behavior immediately" after she emailed him that morning to tell him she had mismanaged her time, a result of her medical condition. ROA.731-732, 255-256. In this notice, Sanchez also reprimanded Ramsey for being

23

late with her leave report for May 2021, which she told him she had forgotten to submit due to her health issues. ROA.955-956 (Ramsey Dep. 88:19-25, 89:1-19). On November 4, 2021, less than thirty days after SJC approved Ramsey's intermittent FMLA leave, Marvel, with knowledge of Ramsey's medical condition and associated hearing impairment, issued Ramsey a Final Corrective Action Notice in which he claimed she had raised her voice, omitting her critical statement made moments before that she had issues with her hearing. ROA.734, 930, 1050-1051. Each of these write-ups contained falsehoods, exaggerations, self-serving omissions, or reprimands directly related to Ramsey's disability, raising a fact issue regarding whether she was terminated on account of her disability. *EEOC v. LHC Grp.*, 773 F.3d at 701.

In addition, Ramsey's simple requests for accommodation – different light bulbs and a headset with a volume control – were either ignored, denied, or met with criticism by SJC leadership who played a role in her termination.[8] *Id.* (comments made by supervisors involved with termination served as evidence of nexus between plaintiff's disability and termination). In 2021, Ramsey's complaints about the

---

[8] The district court found that Ramsey's failure to accommodate claim was time-barred because her requests for accommodation were made more than 300 days prior to filing her Charge of Discrimination. ROA. 1109-1111. This finding does not preclude a consideration of SJC's repeated failures to accommodate Ramsey's disability and the criticisms of her requests as background evidence to support her discriminatory discharge claim under the ADA. *See Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (employee may use prior acts otherwise barred by the statute of limitations as background evidence in support of a timely claim).

24

bright office lighting causing her pain due to her brain fluid leak and migraines were dismissed.  ROA.730. When Ramsey brought in her own lamps and soft bulbs so that she could work, Ramirez (who supported and forwarded the termination recommendation to Hellyer) remarked that Ramsey appeared "unapproachable" because her office door was shut and her office was dark.  ROA.730-731, 976 (Ramsey Dep. 169:16-20, 171:2-18, 172:13-16), ROA.984.  Rodriguez and Sanchez both relayed Ramirez's remarks to Ramsey and criticized Ramsey for her actions. ROA.731, 976 (Ramsey Dep. 170:1-5, 170:10-24, 171:2-18).  Furthermore, Marvel terminated Ramsey eleven days after she met with him to request a Bluetooth earpiece or other listening accommodation to alleviate brain pressure and hearing issues during virtual meetings.  ROA.734.  Ramsey raised a genuine dispute of material fact regarding whether she was terminated on account of her disability and met her burden of establishing a prima facie case of discrimination.

### 2. Ramsey raised a genuine issue of fact regarding whether SJC's reason for termination was a pretext for discrimination.

While the district court found that Ramsey failed to establish a prima facie case of disability discrimination, the court considered the remaining steps in the *McDonnell Douglas* framework and found that Ramsey failed to create a genuine issue of material fact regarding whether SJC's reason for termination ("performance deficiencies") was a pretext for discrimination.  ROA.1115-1120.  In so finding, the

court failed to consider Ramsey's substantial evidence of pretext and did not view factual inferences in the light most favorable to Ramsey. *Caldwell*, 850 F.3d at 241.

If a plaintiff makes the showing of a prima face case, a presumption of discrimination arises, and the employer must articulate a legitimate, non-discriminatory reason for its action. *Id* at 242. The burden then shifts back to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual. *Id.* To survive summary judgment, a plaintiff need only produce evidence creating a fact issue regarding the employer's discriminatory animus or the falsity of the employer's proffered explanation. *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 897 (5th Cir. 2002). Evidence of the falsity of SJC's explanation viewed in conjunction with the prima facie case is sufficient to permit a finding of discrimination without additional evidence. *Id.*; *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996 *en banc*); *Haire v. Board of Sup'rs of La. State Univ. Agricultural & Mech. Coll.*, 719 F.3d 356, 365 n. 10 (5th Cir. 2013) (reversing summary judgment for employer and holding that "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination *even without further evidence of defendant's true motive*.") (italics in original). In the context of a summary judgment proceeding, the question is not whether the plaintiff

proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext. *Caldwell*, 850 F.3d at 242.

In granting summary judgment for SJC on Ramsey's ADA discrimination claim, the court incorrectly asserted, "Plaintiff does not argue Defendant's proffered reason (performance deficiencies) is false." ROA.1116. To the contrary, Ramsey explicitly argued that SJC's purported reason for her termination was false, and she provided sufficient evidence of falsity and discriminatory animus to create a fact issue regarding pretext. ROA.721-725. SJC claimed Ramsey was terminated for "performance deficiencies." ROA.986. However, Ramsey had a 16-year stellar employment history with SJC, with consistently positive reviews and four promotions. ROA.729. It was not until after Ramsey's medical conditions arose that her supervisors began writing her up for frivolous things. ROA.731-734. The documentation is clear: Ramsey had never been written up until she took FMLA leave, had brain surgeries, and sought accommodations. *See* Section III(A)(2)-(10) *supra.* "Evidence of a sudden and unprecedented campaign to document [an employee's] deficiencies and thus justify a decision that ha[s] already been made, however, could raise an inference of pretext." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 236 (5th Cir. 2015). Notably, Ramsey's 2020-2021 performance review, encompassing the period when SJC alleges performance issues began, rated

her "Valuable" with no mention of any "performance deficiencies."[9] Moreover, many of Ramsey's tardiness issues were related to her medical condition, but those that were not, were never issues for Ramsey in her entire career with SJC. ROA.730-733.

The district court failed to consider any of Ramsey's evidence of pretext. ROA.1116-1118. Instead, the court merely distinguished *Burton* from this case, finding that Ramsey "did not point to evidence that Defendant generated retroactive reports on Plaintiff's alleged deficiencies *after* Defendant decided to terminate Plaintiff." ROA. 1118. In adhering to an overly narrow reading of *Burton*, the court improperly assumed that SJC made the decision to terminate Ramsey after documenting her alleged deficiencies, a fact that Ramsey disputes. ROA.731. *Reeves*, 530 U.S. at 150. Moreover, the court failed to recognize Ramsey's actual argument – that SJC's *initiation* of documentation regarding frivolous alleged deficiencies immediately following the escalation of her medical condition and requests for accommodations is the "sudden and unprecedented campaign" that demonstrates pretext. Ramsey consistently received positive reviews for sixteen years, then suffered serious medical issues, then was suddenly subject to disciplinary actions directly related to her disability and terminated, a chronology that strongly

---

[9] Sanchez signed Ramsey's significantly positive performance review on July 6, 2021, approximately one month after his June 3 corrective action notice, further reflecting inconsistency in the appraisal of Ramsey's performance. ROA.886-887.

28

suggests SJC's justification for Ramsey's termination is pretextual. Particularly when viewed in the light most favorable to Ramsey, a reasonable jury could infer that SJC was merely compiling a laundry list of violations to justify its predetermined decision to terminate Ramsey. *See Burton*, 798 F.3d at 237 (evidence that employer had previously been lackadaisical about recording and reporting plaintiff's alleged deficiencies was evidence of pretext). The court erred by failing to consider Ramsey's evidence of pretext and narrowly construing *Burton* to rule in favor of SJC. *Reeves*, 530 U.S. at 150.

More importantly, the demonstrably false statements in Marvel's declaration and Hellyer's affidavit create an issue of fact regarding pretext. In Marvel's declaration, he states, "At the time I made the recommendation to terminate Ms. Ramsey's employment, I did not know she had a disability, and I did not know she had requested accommodations from the College for a disability." ROA.928. However, there is substantial evidence in the record directly contradicting this statement. First, Ramsey explicitly told Marvel about her disability on a number of occasions via email, text messaging, and in-person conversations in July, September, October, and November 2021, and she requested accommodations from him. ROA. 732-735. Second, Marvel's own handwritten notes from his November 21, 2021 meeting with Ramsey (nine days before he recommended her termination), clearly state that Ramsey told him, "I had a brain injury and [was] written up 3 times" and

29

that she had "a case with EEOC and TWC." ROA. 983. Third, Marvel explicitly noted in his November 19, 2021 email to Ramsey that Ramsey asked him for an accommodation. ROA.931-932. All of this evidence directly contradicts Marvel's sworn testimony and calls into question the veracity of his entire affidavit, including his statement that he recommended Ramsey's termination because of "performance deficiencies" and "did not consider Ramsey's time away from work due to doctor's appointments, or personal health issues..." when making his recommendation. ROA.928-929.

Hellyer's affidavit similarly creates a material fact issue regarding pretext. Hellyer claims in her affidavit, "At the time I approved the recommendation to terminate Ms. Ramsey's employment, I did not know she had a disability, and I did not know she had requested accommodations from the College for a disability…" ROA.986-987. Ramsey bcc'd Hellyer on her termination appeal email on December 10, 2021, which explicitly detailed her medical condition and two brain surgeries, and noted her request for accommodations and the fact that she had no write-ups prior to 2021 after her first brain surgery. ROA.735, 990. Hellyer upheld the termination decision on January 13, 2022, with full knowledge of Ramsey's

disability and request for accommodations, directly contradicting her sworn testimony.[10] ROA.735, 990.

Like Marvel's false statements, Hellyer's false statements call into question the veracity of her entire declaration, including her assertion that she approved the termination solely due to "performance deficiencies." ROA.986-987. The court erred in giving undue credence to Marvel's declaration and Hellyer's affidavit while disregarding all of Ramsey's evidence of pretext. *See Reeves* at 150 ("… although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe…the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party *that is uncontradicted and unimpeached'*") (emphasis added). *See also Eastern Concrete Materials v. Ace American Insurance Co.*, 948 F.3d 289, 295 (5th Cir. 2020) (at the summary judgment stage, "[the court] must accept the plaintiff's uncontroverted allegations, and resolve in [her] favor all conflicts between the facts contained in the parties' affidavits and other documentation"). At the very least, Hellyer's affidavit creates a fact issue regarding

---

[10] SJC that contends that Hellyer made the decision to terminate Ramsey on December 1, 2021, and merely "upheld" the decision by letter dated January 22, 2022. ROA.1065. The fact is that Hellyer's final approval of the termination recommendation did not occur until after Ramsey's appeal, when she had full knowledge of Ramsey's disability and request for accommodations. ROA.735, 990. Otherwise, there would be no point for SJC to have an appeals process. Hellyer affirmed the decision with knowledge of Ramsey's disability and request for accommodations. ROA.735, 990. Accordingly, her affidavit is misleading at best.

her discriminatory animus and the falsity of SJC's reason for termination warranting reversal of summary judgment on Ramsey's disability discrimination claim. *Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002) (discrepancies in decision-maker's affidavit concerning how adverse decision was made and fact that plaintiff had positive performance review demonstrated material issue of fact regarding pretext).

Even if Hellyer continues to claim that she had no knowledge of Ramsey's disability and requests for accommodations when she denied Ramsey's appeal and confirmed her termination, despite contradictory evidence, SJC cannot escape liability under the "Cat's Paw" theory. Courts do not "blindly accept the titular decisionmaker as the true decisionmaker." *Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003). Rather, the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker "acted as a rubber stamp, or the 'cat's paw,' for the subordinate employee's prejudice." *Id. See also Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011) (employer is liable for discrimination if supervisor performs act motivated by discriminatory animus that is intended to cause an adverse employment action, if that act is the proximate cause of the ultimate employment action).

The district court erroneously concluded that Ramsey failed to show that Marvel exhibited discriminatory animus, reasoning that Marvel's mere knowledge of Ramsey's disability was insufficient to demonstrate animus. ROA.1119. Ramsey

demonstrated that Marvel not only had knowledge of her disability and requests for accommodation, but he also recommended her termination twelve days after she requested an accommodation from him and *nine days* after she complained to him of disability discrimination. ROA.734-735, 931-932, 983. This sequence of events strongly suggests a discriminatory animus directly tied to her disability, her requests for accommodation, and her complaint of discrimination. A jury could reasonably infer that Marvel's animus tainted the decision-making process, making his recommendation the proximate cause of Ramsey's termination. *Staub*, 562 U.S. at 422; *Stepanischen v. Merch. Despatch Transp. Corp.*, 722 F.2d 922, 929 (5th Cir. 1983) ("At the summary judgment stage of litigation, a court should ask itself whether the plaintiff could prevail if a jury or judge believed plaintiff's version of the facts and disbelieved defendant's version.").

The district court further erred in finding that Ramsey failed to provide evidence that Marvel exercised leverage over Hellyer in the termination decision. ROA.1120. Ramsey offered evidence that Marvel exercised considerable leverage over the termination decision because: (1) he made the recommendation to terminate Ramsey; (2) he issued the Final Corrective Action Notice and termination letter to Ramsey; and (3) Del Bello, Ramirez, and Hellyer relied upon Marvel's recommendation. ROA.712-713, 725, 928, 984-986. Hellyer's own claim that she had no knowledge that Ramsey had a disability, had requested accommodations, or

33

had requested or taken FMLA suggests that she did not conduct her own investigation into Ramsey's job performance at SJC and relied upon Marvel's recommendation to terminate Ramsey. ROA.986-987. Ramsey put forth sufficient evidence to raise a fact issue regarding Marvel's leverage over Hellyer in the termination decision and demonstrated that SJC's proffered reason for her termination was a pretext for discrimination. Accordingly, summary judgment should be reversed on her disability discrimination claim.

### C. The district court erred in granting summary judgment on Ramsey's ADA retaliation claim.

The district court granted summary judgment on Ramsey's ADA retaliation claim, finding that Ramsey failed to respond to SJC's argument that she did not engage in protected activity, and she failed to brief a retaliation argument. ROA.1120-1121. Again, the court dismissed Ramsey's claim without considering any of her evidence or analyzing the claim under the applicable burden-shifting framework. This was legal error and warrants reversal. *Stepanischen*, 772 F.2d at 930.

To establish a prima facie case of ADA retaliation, the plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. *Feist v. La., Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). If the employee

establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Id.* After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation. *Id.*

Contrary to the district court's finding, Ramsey did produce evidence that she engaged in protected activity under the ADA, and she briefed her ADA retaliation claim in conjunction with her ADA discrimination claim. ROA.720-725. With respect to her prima facie case of retaliation, Ramsey asserted that she repeatedly requested reasonable accommodations and SJC failed to provide them, including her request to Marvel for a Bluetooth earpiece or another type of listening accommodation on November 19, 2021, twelve days before he recommended her termination. ROA.720-722. *See also* Sections III(A)(2),(9),(12) *supra.*

In addition, Ramsey brought forth evidence of Marvel's handwritten notes from his November 21, 2021 meeting with her, which reflect Ramsey's protected activity of complaining to him about SJC's discrimination and failure to accommodate her disability nine days before he decided to terminate her. *See* 42 U.S.C. § 12203(a); ROA.722, 734-735, 983. Ramsey clearly established that she participated in protected activity for purposes of her prima facie case of retaliation under the ADA.

35

Ramsey also established a causal connection between her termination and her protected activity by demonstrating close temporal proximity between her protected activity and her termination. ROA.722, 928, 931-932, 983. *See January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023) (close timing between protected activity and decision to terminate, such as a period of a few months, is sufficient to establish causal link). Specifically, Ramsey established that Marvel recommended her termination twelve days after she requested an accommodation from him and nine days after she complained of discrimination and SJC's failure to reasonably accommodate her. ROA.722, 928, 931-932, 983. This evidence was more than sufficient to establish a causal connection between her termination and her protected activity. *January*, 74 F.4th at 653.

Furthermore, Ramsey raised a material fact issue regarding whether SJC's alleged nonretaliatory reason for her termination was a pretext for retaliation with the same arguments and evidence cited in her discriminatory discharge claim under the ADA. ROA.720-725. Specifically, Ramsey raised a fact issue regarding pretext through: (1) Marvel's and Hellyer's claims that they had no knowledge of Ramsey's disability or request for accommodations despite contradictory evidence, including Marvel's handwritten notes from November 21, 2021; (2) the highly suspicious timing of SJC's sudden campaign to document Ramsey's alleged performance deficiencies after sixteen years of accolades and stellar performance reviews; (3) the

36

fact that the three write-ups that led to Ramsey's termination were each preceded by a medical event in Ramsey's life, an accommodation request, or returning from FMLA; and (4) the fact that SJC could not escape liability by claiming that Hellyer did not know about Ramsey's disability or request for accommodations under the *Cat's Paw* theory of liability outlined in *Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011). ROA.720-726.    Ramsey hereby incorporates her arguments regarding pretext from Section V(B)(2) *supra*.

The district court failed to consider over five pages of evidence and arguments in Ramsey's Response with respect to her ADA retaliation claim, failed to apply the burden-shifting framework, and ultimately granted summary judgment because it did not approve of Ramsey's briefing style. ROA.1121.  This was legal error, and summary judgment should be reversed on this claim. *See Reeves,* 530 U.S. at 150; *Stepanischen*, 772 F.2d at 930 (noting that a court's assessment that a nonmoving party fails to match the length and quality of the moving party's papers does not relieve the court of its statutory task of determining whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact…." (quoting Fed. R. Civ. P. 56(c)).

**D. The district court erred in granting summary judgment on Ramsey's FMLA retaliation claim.**

FMLA retaliation claims are also analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hunt v. Rapides Healthcare Sys.*, *LLC*, 277 F.3d 757, 768 (5th Cir. 2001). To establish a *prima facie* case of retaliatory discharge under the FMLA, the plaintiff must show: (1) she engaged in protected activity; (2) the employer discharged her; and (3) there was a causal link between the protected activity and the discharge. *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 332 (5th Cir. 2005).

The district court found that Ramsey established a prima facie case of retaliatory discharge because SJC decided to terminate her on December 1, 2021, less than two months after her intermittent FMLA leave request (approved through July 1, 2022) was revised with additional approved leave for migraines, and less than three months after she was approved for FMLA leave retroactively. ROA.1106. However, the court granted summary judgment on this claim because it found that Ramsey failed to point to evidence of pretext. ROA.1107-1109.

Contrary to the court's findings, Ramsey did produce evidence to create a material fact issue regarding whether her termination was a pretext for FMLA retaliation, and the court again erred in failing to consider her evidence. ROA.727-728. *Caldwell*, 850 F.3d at 241. To demonstrate pretext, a plaintiff need only produce evidence creating an issue of fact issue regarding the employer's retaliatory animus

or the falsity of the employer's non-retaliatory explanation. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). *See also Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996 *en banc*) (when evidence of the falsity of the employer's reason is viewed in conjunction with the *prima facie* case, such evidence "will often, perhaps usually, permit a finding of discrimination without additional evidence"). In an effort to avoid a repeated lengthy recitation of facts, Ramsey pointed the district court to sections C through K of the factual background section of the Response to SJC's First Amended Motion for Summary Judgment, arguing that these sections detailed (with clear headings) how she was written up or retaliated against each time she requested or went on FMLA leave. ROA.727, 703-712.

Ramsey also provided specific evidence regarding the temporal proximity between her termination and SJC's revision and retroactive approval of her FMLA requests. ROA.727. The court considered Ramsey's evidence regarding temporal proximity, but only for purposes of satisfying her prima facie case. ROA. 1106. The court refused to consider *any* of Ramsey's evidence of pretext, claiming that Ramsey did not "identify specific evidence in the record and…articulate the precise manner in which that evidence supports …her claim" (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). ROA.1108. The court ignored Ramsey's explicit statement in her Response that the cited evidence supported her argument that she was retaliated against and written up each time she sought or went

39

out on FMLA leave.  ROA.727.  Then, in refusing to consider Ramsey's evidence, the court quoted Seventh Circuit precedent, asserting: "]j]udges are not like pigs, hunting for truffles buried in the record" (quoting *Albrechsten v. Bd. of Regents of Univ. of Wisc. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)).  ROA.1108.  By contrast, the court took no issue with SJC incorporating its arguments from the FMLA retaliation section of its First Amended Motion for Summary Judgment into the ADA discrimination section of the Motion, while offering no explanation as to how those arguments entitled it to summary judgment on Ramsey's ADA claim.  ROA.408, 1111-1120.  By ignoring over ten pages of evidence of pretext cited by Ramsey in her Response, the district court failed in its statutory task of reviewing the pleadings and the record to determine if there is a genuine issue of material fact.  ROA.703-712, 725-728, 1108.  *Stepanischen*, 772 F.2d at 930; *Reeves*, 530 U.S. at 150.

Importantly, the Fifth Circuit has held that a nonmovant may satisfy its responsive burden by cross-citing to its own motion for summary judgment if the cross-cited pages contain argument and citations to the record that unambiguously create the alleged issue of fact.  S*ee CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 273 (5th Cir. 2009) (holding that the district court erred in refusing to consider nonmovant's cited evidence where nonmovant's response brief alleged that there was a material issue of fact and supported this allegation with a targeted cross-citation of four pages of its own motion).  Ramsey's citation of evidence within the

40

Response itself (versus a citation of evidence contained in a cross motion for summary judgment – an entirely separate document) suffices under this standard. Moreover, the Fifth Circuit has held that "[t]he fact finder may rely on all the evidence in the record to draw [an] inference of discrimination. *Rhodes*, 75 F.3d at 994. Thus, the court was not limited to only the evidence Ramsey cited to find pretext. *See also Stepanischen*, 722 F.2d at 930 ("...[Rule 56] does not limit the court's examination to issues raised in affidavits or to record evidence pinpointed in the parties' memoranda.").

Ramsey demonstrated that she had positive performance reviews for sixteen years (including the year she was terminated), and then each time she went out on FMLA leave or sought FMLA leave, she was retaliated against and written up. ROA.729-735. Notably, her first write-up in sixteen years came just eleven days after returning from her first FMLA leave for brain surgery and included false statements regarding alleged tardiness while she was on approved FMLA leave. ROA.731. The June 3, 2021 corrective action notice came six days after SJC denied Ramsey's request for additional FMLA leave and included reprimands related to her medical condition. ROA.255-256, 731-732. The November 4, 2021 Final Corrective Action Notice came approximately one month after SJC revised her FMLA Designation Notice adding additional leave time for migraines, included reprimands directly related to her medical condition, and omitted Ramsey's critical

statement that she raised her voice due to issues with her hearing. ROA.923-925, 1050-1051. This pattern and timing of disciplinary actions strongly suggests a retaliatory animus and pretext. Moreover, all of the evidence of pretext discussed in Section V(B)(2) *supra* applies to Ramsey's FMLA retaliation claim. *See Caldwell*, 850 F.3d at 246 (reversing summary judgment for employer and holding that plaintiff's pretext arguments suggesting falsity of employer's proffered reason for termination with respect to the ADA applied equally to the FMLA).

In finding that Ramsey failed to raise a fact issue regarding pretext, the court noted that "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext" (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)). ROA.1108. However, Ramsey did more than simply dispute the underlying facts of her purported "performance deficiencies"; she created genuine issues of material fact regarding the falsity and discriminatory animus behind the termination decision. ROA.703-712, 725-728. All of this evidence in conjunction with her prima facie case was sufficient to create an issue of material fact regarding pretext. Thus, this Court should reverse summary judgment on Ramsey's FMLA retaliation claim.

**E. The district court erred in granting summary judgment on Ramsey's FMLA interference claim.**

The district court granted summary judgment on Ramsey's FMLA interference claim, finding that Ramsey did not identify any evidence to support her assertion that SJC interfered with, restrained, or denied her FMLA leave. ROA.1103-1104. In so finding, the court again ignored Ramsey's evidence and argument. ROA.1103-1104. However, Ramsey did offer evidence that SJC interfered with and denied her FMLA leave – she asserted that SJC terminated her while she was on intermittent FMLA leave. ROA.728, 917-918. The court failed to consider Ramsey's argument, simply concluding that she failed to identify any evidence to support her claim. ROA.1104. The court did not reach the issue of whether Ramsey was prejudiced by the interference. ROA.1104.

To establish an FMLA interference claim, the plaintiff must show that (1) she was an eligible employee; (2) her employer was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) her employer denied her the benefits to which she was entitled. *Caldwell*, 850 F.3d at 245. It is undisputed that Ramsey was an eligible employee, SJC was subject to the FMLA, and Ramsey gave proper notice of her intent to take leave. ROA.1102. Thus, the question for the district court was whether SJC denied Ramsey the benefits to which she was entitled. ROA.1102.

Ramsey's request for intermittent FMLA leave was approved through July 1, 2022, and she was terminated on December 3, 2021. ROA.917-918, 988-989. The termination itself constituted interference with her ongoing FMLA intermittent leave. While SJC approved her to use intermittent leave, her termination prevented her from doing so and denied her the future benefits of that approved leave. Moreover, as demonstrated in Sections V(B)(2), V(C), and V(D) *supra*, SJC's proffered reason for Ramsey's termination was a pretext for discrimination and retaliation. Accordingly, the termination and denial of her FMLA leave clearly prejudiced Ramsey. The district court's finding that Ramsey offered no evidence of interference ignores her argument that the termination, which occurred during a period of approved intermittent FMLA leave, was the very act of interference. Ramsey created a genuine dispute of material fact as to whether SJC denied her a benefit to which she was entitled (approved intermittent leave) under the FMLA. Accordingly, summary judgment should be reversed on this claim.

## VI.    CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff-Appellant Jennifer Ramsey respectfully requests that this Honorable Court reverse the district court's Order granting summary judgment and dismissing her claims, and remand the case for a jury trial on the merits of her ADA discrimination, ADA retaliation, FMLA retaliation, and FMLA interference claims.

Respectfully submitted,

**SHELLIST LAZARZ SLOBIN LLP**

*/s/ Michael Todd Slobin*

Michael Todd Slobin
State Bar No. 24002953
tslobin@eeoc.net
Dorian Vandenberg-Rodes
State Bar No. 24088573
drodes@eeoc.net
5373 West Alabama, Suite 600
Houston, Texas  77056
(713) 621-2277 (Tel)
(713) 621-0993 (Fax)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been served upon

counsel for Defendant as identified below through the Court's electronic filing

system as follows:

Paul A. Lamp
Morgan Beam
Spalding Nichols Lamp Langlois
3700 Buffalo Speedway, Suite 500
Houston, Texas  77098
Telephone:  713-993-7060
Facsimile:  888-726-8374
Attorney for Defendant, SJC

Houston, Texas, this 25th day of August, 2025.

*/s/ Michael Todd Slobin*
Michael Todd Slobin
Attorney for Plaintiff-Appellant,
Jennifer Ramsey

## <u>CERTIFICATE OF COMPLIANCE</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,196 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2019 in Times New Roman 14 point font for text and 12 point font for footnotes.

*/s/ Michael Todd Slobin*
Michael Todd Slobin
Attorney for Plaintiff-Appellant,
Jennifer Ramsey

Dated:  August 25, 2025