No. 25-20195

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

**JENNIFER RAMSEY,**
*Plaintiff - Appellant*

v.

**SAN JACINTO COLLEGE DISTRICT,**
*Defendant - Appellee*

---

On Appeal from The United States
District Court, Southern District of Texas
Houston Division, Civil Action No. 4:23-CV-1719,
The Honorable Richard W. Bennett,
United States Magistrate Judge Presiding

---

**BRIEF OF APPELLEE**

---

> **SPALDING NICHOLS LAMP LANGLOIS**
> Paul A. Lamp
> State Bar No. 24002443
> 3700 Buffalo Speedway, Suite 500
> Houston, Texas 77098
> (713) 993-7075 (Tel)
> (888) 726-8374 (Fax)
> **COUNSEL FOR DEFENDANT/APPELLEEE**
> **SAN JACINTO COLLGE DISTRICT**

## CERTIFICATE OF INTERESTED PERSONS

### No. 25-20195

### JENNIFER RAMSEY,

*Plaintiff - Appellant*

v.

### SAN JACINTO COLLEGE DISTRICT,

*Defendant - Appellee*

Pursuant Fifth Circuit Rule 28.2.1, Appellee, as a governmental party, is exempt from furnishing a certificate of interested persons.

/s/ *Paul A. Lamp*
Attorney for Appellee
San Jacinto College District

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee San Jacinto College District (SJCD) does not believe the issues raised in Appellant Jennifer Ramsey's brief merit oral argument. Contrary to Appellant's Statement Regarding Oral Argument, the factual record is not "complex" and the decisionmaker's (Dr. Brenda Hellyer) knowledge and intent are incontrovertible. Oral argument would not significantly add to what the parties have presented in their respective briefs, and the trial court's final judgment should be affirmed without further expenditure of this Court's and/or the parties' resources.

2

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS…………….….…………...2

STATEMENT REGARDING ORAL ARGUMENT………………………...2

TABLE OF CONTENTS……………………………………………….......3

TABLE OF AUTHORITIES……………………………………………….5

STATEMENT OF THE CASE……………………….……………………8

   A. Ramsey's at-will employment as SJC's Learning Technology Manager..….8

   B. Three consecutive supervisors issued write-ups to Ramsey……………..……8

   C. SJC's Termination of Ramsey's Employment……………..……………14

   D. SJC Approved All of Ramsey's FMLA Requests…………………………15

   E. Ramsey's EEOC Charge and Lawsuit…………………………………16

SUMMARY OF THE ARGUMENT………………………………………..17

ARGUMENT………………………………………………………………...19

   A. The District Court Did Not Err in Granting Summary Judgment on Ramsey's ADA Claims1……………………………………………...19

      1. Ramsey abandons her failure-to-accommodate claim on appeal……...19

      2. Ramsey abandoned her retaliation claim in the district court and cannot resurrect that claim on appeal…………………..………19

      3. This Court may otherwise affirm the dismissal of Ramsey's retaliation claim based on the record evidence……………..……...20

      4. Ramsey's disability discharge claim…………..……………..………21

B. The District Court Did Not Err in Granting Summary Judgment on Ramsey's FMLA Claims……………...…….……………………………………24

    1.  Ramsey's interference claim………………………….……………..24

    2.  Ramsey's retaliation claim…………………………………………27

CONCLUSION AND PRAYER ........................................................................30

CERTIFICATE OF SERVICE ..........................................................................30

CERTIFICATE OF COMPLIANCE ..................................................................31

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                         **<u>Page</u>**

*Amedee v. Shell Chemical LP-Geismer Plant,*
　　384 F. Supp. 3d 613, 631 (M.D. La. 2019) ....................................................25

*Black v. North Panola Sch. Dist.,.*
　　461 F.3d 584, 588 n.1. (5th Cir. 2006) ..........................................................20

*Chaney v. New Orleans Pub. Facility Mgmt., Inc.,*
　　179 F.3d 164, 168 (5th Cir. 1999) .................................................................21

*CQ, Inc. v. TXU Mining Co.,*
　　565 F.3d 268 (5th Cir. 2009) .........................................................................26

*Grubb v. Southwest Airlines,*
　　296 Fed. App'x 383, 391 (5th Cir. 2008) ......................................................25

*Hernandez v. Velasquez,*
　　522 F.3d 556, 560 (5th Cir. 2008) .................................................................26

*Johnson v. Collier,*
　　137 F.4th 376, 383 (5th Cir. 2025) ................................................................27

*Martin v. Penske Logistics, LLC,*
　　736 F. Supp. 3d 437, 450-51 (N.D. Tex. 2024)............................................26

*Ramirez v. Escajeda,*
　　921 F.3d 497, 500 (5th Cir. 2019) .................................................................19

*Spears v. La. Dep't of Pub. Safety & Corrections,*
　　2 F. Supp. 3d 873, 878 (M.D. La. 2014). .....................................................26

*Vela v. City of Houston,*
　　276 F.3d 659, 670 (5th Cir. 2001) .................................................................20

*Wiseman v. New Breed Logistics, Inc.,*
　　72 F. Supp. 3d 672, 678 (N.D. Miss. 2014) ..................................................29

## STATUTES, REGULATIONS, AND RULES

29 C.F.R. 825.216(a)..................................................................................25

29 U.S.C. § 2614(a)(3)(B). ......................................................................25

**No. 25-20195**

---

## UNITED STATES COURT OF APPEALS FIFTH CIRCUIT

---

**JENNIFER RAMSEY,**

*Plaintiff - Appellant*

v.

**SAN JACINTO COLLEGE DISTRICT,**

*Defendant - Appellee*

---

On Appeal from The United States
District Court, Southern District of Texas
Houston Division, Civil Action No. 4:23-CV-1719
The Honorable Richard W. Bennett,
United States Magistrate Judge Presiding

---

**BRIEF FOR DEFENDANT-APPELLEE**

**SAN JACINTO COLLEGE DISTRICT**

---

TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT:

Defendant-Appellee San Jacinto College District files its Brief in support of affirmance of the April 30, 2025, Final Judgment of the United States District Court for the Southern District of Texas, Houston Division.

**STATEMENT OF THE CASE**

**A.      Ramsey's at-will employment as SJC's Learning Technology Manager.**

SJC employed Ramsey as a Learning Technology Manager – an at-will position. ROA 426-427, 549-554, 619. SJC uses an online human resources platform called Cornerstone, and one of Ramsey's most important job duties was managing and implementing the Learning Management System ("LMS") module within Cornerstone. ROA. 619. The LMS module is an employee training module that was used throughout the College. ROA 619. Ramsey would receive training requests from departments across the College and she was responsible for ensuring the training materials responsive to those requests were properly and timely planned, configured, tested, designed, implemented, and deployed through the LMS module. ROA 619. This required her to effectively collaborate with the departmental representatives requesting the training, known as "content owners," to ensure the training materials met the department's objectives. ROA 619.

**B.      Three consecutive supervisors issued write-ups to Ramsey.**

During 2020 and early 2021, Ramsey's immediate supervisor (called a "leader") was Gabriel Rodriguez. ROA 617. On January 15, 2021, Rodriguez issued Ramsey a letter of expectations. ROA 455-456, 562. In the letter, Rodriguez noted that Ramsey had arrived "well after" her 8:00 a.m. start time on January 13 and 15, 2021, without informing him of her tardiness, and that she had done so "many times

over the past several months." ROA 562. Rodriguez directed Ramsey to correct these deficiencies. ROA 562.

Rodriguez left SJC's employment at the end of February 2021 and Ronald Sanchez because Ramsey's leader. ROA 603. On March 3, 2021, Ramsey sent Sanchez an email asking if she could change her work schedule to 9:00 a.m. to 6:00 p.m. for two reasons – first, because she no longer felt unsafe in the office after 5:00 p.m. due to Rodriguez's departure, and second, to help her show up to work on time. ROA 603. Ramsey's start time was 8:00 a.m. and she had reported to late on several occasions during the prior several months. ROA 603. Sanchez approved Ramsey's request. ROA 610. Ramsey's March 3, 2021, request was the only request Sanchez ever received from her regarding a change to her work schedule. ROA 603. At no other time did Ramsey ever submit a request to Sanchez asking for a change to her work schedule or any other form of workplace accommodation due to a health condition. ROA. 603.

On June 3, 2021, Sanchez issued Ramsey a letter notifying her that she was "being placed on a written corrective action notice" and that he expected her to improve her "performance and behavior immediately to meet expectations." ROA 604, 612-613. Sanchez issued the corrective action notice to Ramsey for several reasons. On May 12, 2021, Ramsey did not report to work and did not call to notify me she was not coming to work. ROA 612-613. Sanchez contacted her just prior to

9

12:00 p.m. and she told me she did not report to work because a dishwasher delivery was running late, and she asked if she could work remotely the rest of the day. ROA 612-613. Sanchez warned Ramsey of the importance of timely communicating with him, as her leader, if she is unable to report to work on time rather than him having to contact her because she was a no-show at work. ROA 612-613.

On the morning of June 3, 2021, Ramsey sent Sanchez an email stating that she had mismanaged her time that morning and was running late. ROA. 604; ROA. 615. Ramsey did not arrive to work until 10:45 a.m., which caused her to miss a meeting Sanchez had scheduled with her for 9:30 a.m. that morning to discuss the Annual HR Report. ROA. 612; ROA 615. Ramsey also failed to timely submit her leave report for May 2021 despite reminders from Sanchez and from SJC's Payroll department. ROA 612-613. At the end of the corrective action notice, Sanchez issued Ramsey a series of directives to improve her performance, and he concluded the letter as follows: "Should you fail to comply with these directives, you will be placed on further corrective action. It is my intent that you fully understand these directives and the College's expectations. If you have any questions about this communication, please contact me immediately." ROA 612-613.

Kam Marvel became Ramsey's leader at the beginning of July 2021, at which time Sanchez was no longer her leader. ROA 604. On July 1, 2021, Sanchez sent Ramsey an email notifying her that her new leader was starting soon and directing

her to improve the ongoing deficiencies in her work performance so that she would have a successful working relationship with her new leader. ROA 617.

Soon after Marvel became Ramsey's leader, she went out on FMLA leave until she returned to work on September 7, 2021. ROA 619. After her return, SJC approved her to take intermittent FMLA leave for doctor's appointments, and Marvel approved every request she made to take intermittent FMLA leave for doctor's appointments. ROA 619.  During the time Marvel was her leader, Ramsey reported late to work on many occasions, as shown by the text messages between Ramsey and Marvel:

- September 27, 2021 – late because of traffic

- September 29, 2021 – late because she forgot something at home

- September 30, 2021 – late and "running behind"

- October 4, 2021 – late due to cleaning up "rodent carnage" at home

- October 14, 2021 – late and "back logged with work"

- October 19, 2021 – late due to "slow tire leak"

- October 20, 2021 – late due to unexpected visit from daughter

- November 3, 2021 – because she took her mother to ER the night before

- November 8, 2021 – late because of traffic

- November 11, 2021 – late because of traffic

ROA 620, 636-651.

11

On September 16, 2021, Dr. Michelle Cantu Wilson, SJC's Director, Teaching and Learning Initiatives and Special Projects, contacted Ramsey via email and requested that eleven "AVID" training sessions be created by September 24, 2021. ROA 620. Ramsey failed to create any of the sessions by the due date. ROA 620. On September 30, 2021, Dr. Wilson contacted Ramsey via email to obtain a status report on the sessions. ROA 620. Ramsey replied on October 1, 2021, and stated she would have the sessions completed by the end of the day. ROA 574-578. When Ramsey did not complete the sessions as stated, Dr. Wilson contacted Ramsey on October 7, 2021, to notify her that she (Dr. Wilson) had to cancel two sessions because she did not have time to promote the event and again asked Ramsey for an update on the remaining sessions. ROA 574-578. On October 11, 2021, Dr. Wilson asked Ramsey to deactivate all previously set up AVID training sessions as they were not completed in a timely manner and, therefore, she was going to have to enact an alternative plan of action. ROA 574-578. Although Dr. Wilson requested that Ramsey cancel all AVID training sessions, Ramsey continued to work on completing the sessions. ROA 574-578. Marvel found that Ramsey's failure to handle Dr. Wilson's request for AVID training sessions constituted extremely poor work performance. ROA 620.

On November 1, 2021, Marvel asked Ramsey to complete an "SLT Compliance Completion" report by the end of the day. ROA 620. Ramsey did not

meet this deadline. ROA 620. Marvel asked her on November 2, 2021, to provide him with the report by the end of the day, and while she indicated that she would get the report to him "ASAP," she failed to meet the second deadline. ROA 620. As of November 4, 2021, Ramsey had failed to submit the report to Marvel for review and dissemination. ROA 620.

On November 4, 2021, Marvel issued Ramsey a final corrective action notice letter. ROA 621, 653-654. In the letter, Marvel referenced the fact that Ramsey had previously been issued a letter of expectations on January 15, 2021, and a corrective action notice on June 3, 2021, for attendance concerns and not timely notifying her leaders of her late arrivals to work. ROA 621, 653-654. Ramsey was exhibiting the same poor performance under Marvel's supervision. Unfortunately, Ramsey continued to exhibit performance deficiencies during November 2021 after Marvel issued her the final corrective action notice. ROA 621, 656-659.

One of Ramsey's job responsibilities was to prepare "non-completer" reports. ROA. 621. On November 2, 2021, Ramsey gave Marvel a non-completer report she prepared, and he noticed several errors in her work product. ROA 621. Marvel asked Ramsey to review the report and correct the errors. ROA 621. Ramsey resent the report to Marvel on November 5, 2021, and he noticed it contained similar errors. ROA 621. Based on Ramsey's poor work product and repeated errors, Marvel reassigned the task to another employee. ROA 621. Ramsey was also responsible

for creating a job aid to correct user transcript issues. ROA 621. On October 18, 2021, Ramsey told Marvel she had created the job aid, and he instructed her to send it to him along with a report showing the affected employees. ROA. 621. Ramsey did not comply with his instruction. ROA 621. After October 18, 2021, Marvel requested this work product from Ramsey four more times before finally received it from her on December 1, 2021. ROA 621. When Marvel reviewed her work, it contained multiple errors and was unacceptable. ROA 621.

**C.     SJC's Termination of Ramsey's Employment.**

Later in the day on December 1, 2021, Marvel spoke to Vickie Del Bello, SJC's Vice President Human Resources, about Ramsey's ongoing performance problems, and he recommended the termination of Ramsey's employment. ROA 621. Marvel recommended Ramsey's termination because of the numerous performance deficiencies she exhibited under his leadership, which came after she had already received a letter of expectations on January 15, 2021, and a corrective action notice on June 3, 2021. ROA 621.

SJC's Chancellor, Dr. Brenda Hellyer, approved the recommendation on December 1, 2021. ROA 664. Dr. Hellyer did not know Ramsey had a disability and did not know Ramsey had requested accommodations from the College for a disability. ROA 664. Dr. Hellyer also did not know Ramsey had requested or taken FMLA leave while she was employed by the College. ROA 664. On December 3,

14

2021, Marvel issued Ramsey a termination letter setting forth the grounds for her termination, which was effective that day. ROA 621, 661-662. During her deposition, Ramsey testified about her termination as follows:

Q:    Do you know what person or persons made the decision to terminate your employment with the college?

A:    No.

***

Q:    . . . Do you know what – what information the college considered when deciding to terminate your employment with the college?

A:    I'd hoped that they'd considered my medical records and everything that I've been through and my FMLA.

Q:    No, I'm asking if you – if you know what they did consider, not what you hoped they'd consider.

A:    No.

ROA 524-525.

**D.    SJC Approved All of Ramsey's FMLA Requests.**

Ramsey testified during her deposition that she took FMLA leave from SJC on two occasions—from November 2020 through January 4, 2021 (for a surgery), and from July through September 7, 2021 (for another surgery). ROA 447-456, 482. Ramsey admitted during her deposition that SJC approved both requests. ROA 447-456, 482. With respect to the November 2020 FMLA leave, Ramsey had surgery to

correct a hearing issue in her left ear. ROA 453-455. Ramsey's doctor released her to return to work without restrictions on January 4, 2021. ROA 455m 560.

With respect to the July 2021 FMLA leave, Ramsey's doctor released her to return to work without restrictions on September 7, 2021. ROA 482-483, 670, 682. Ramsey requested, and received, approval to take intermittent leave after her return on September 7, 2021. ROA 483-484. Marvel approved all of Ramsey's requests to take intermittent leave for doctor's appointments. ROA 619-620. Ramsey similarly testified as follows:

> Q:    I mean, do you ever remember having any issues at all with Mr. Marvel as far as going to doctors' appointments and using your FMLA to do that?
>
> A:    Not using my FMLA to go to appointments, no.
>
> Q:    I'm not following, what do you mean by that?
>
> A:    You asked if I had any issues with Kam about using my FMLA to go to appointments, and the answer is no.

ROA 490.

### E.    Ramsey's EEOC Charge and Lawsuit.

Ramsey filed an EEOC charge alleging disability discrimination (based on a hearing disability) and retaliation on November 9, 2022—*exactly 300 days after her termination*—and the EEOC issued a right-to-sue letter on February 9, 2023. ROA 544, 599-601. Ramsey filed an Original Complaint on May 9, 2023, and filed a First

16

Amended Complaint on June 30, 2023. ROA 14, 45-51. Ramsey asserted the following claims against SJC in her First Amended Complaint:

- An FMLA interference claim;

- An FMLA retaliation claim;

- An ADA failure-to-accommodate claim;

- An ADA retaliation claim; and

- An ADA discriminatory discharge claim.

ROA 49-50.

## SUMMARY OF THE ARGUMENT

There are numerous grounds supporting this Court's affirmance of the district court's dismissing of this case on summary judgment and entry of final judgment. In the district court, Ramsey asserted claims against her former employer, San Jacinto College District ("SJC") under the ADA and the FMLA. Ramsey's ADA claims included failure-to-accommodate, retaliation, and discriminatory discharge. Ramsey's FMLA claims included interference and retaliation.

Regarding Ramsey's ADA claims, the district court dismissed Ramsey's failure-to-accommodate claim based on limitations, and Ramsey does not challenge that dismissal on appeal or even brief her failure-to-accommodate claim. Ramsey also failed to respond to SJC's summary judgment argument in the district court as to her retaliation claim, but even so, the testimony of the person who made the

decision to fire Ramsey—SJC's Chancellor, Dr. Brenda Hellyer—is clear, incontrovertible, and establishes that Ramsey was fired because of her performance deficiencies. Ramsey's efforts to overcome Dr. Hellyer's testimony amount to misrepresentations of the record and arguments that are logically frivolous.

Regarding Ramsey's FMLA interference claim, her primary argument on appeal is that SJC interfered with her FMLA rights because it fired her when she was "on" FMLA leave. Not only is this a flat malpresentation of the record, it also is facially erroneous as a matter of law. While SJC had approved Ramsey for intermittent leave as needed, Ramsey was not "on" FMLA leave when she was fired, and even if she was, being on FMLA leave is not a free pass that permits employees like Ramsey to perform horrible work for her employer. Finally, Ramsey's FMLA retaliation claim fails for the same reason as her discriminatory discharge claim— Dr. Hellyer's is clear and unequivocal—she fired Ramsey because of Ramsey's poor and unacceptable work product, and Dr. Hellyer did not even know Ramsey had requested or used FMLA leave.

Ramsey's arguments are woefully insufficient to warrant a reversal of the district court's dismissal of Ramsey's claims and this court should affirm the same in all respects.

## **ARGUMENT**

**A.    The District Court Did Not Err in Granting Summary Judgment on Ramsey's ADA Claims.**

1.    <u>Ramsey abandons her failure-to-accommodate claim on appeal.</u>

The district court correctly granted summary judgment on Ramsey's failure-to-accommodate claim under the ADA based on limitations. ROA 1109-1111. Ramsey did not address SJC's limitations argument in her summary judgment response (ROA 1109) and does not challenge the district court's finding on appeal. Objectively, Ramsey's failure-to-accommodate claim was brought in bad faith. In any event, Ramsey has abandoned her failure-to-accommodate claim. *See Ramirez v. Escajeda*, 921 F.3d 497, 500 (5th Cir. 2019) (holding that issues not briefed on appeal are abandoned).

2.    <u>Ramsey abandoned her retaliation claim in the district court and cannot resurrect that claim on appeal.</u>

In her lawsuit, Ramsey plead that SJC terminated her because of her disability, and because she requested accommodations. ROA 45. The first theory is disability discrimination, while the second theory is retaliation. Ramsey conflates (or does not understand) these two theories in her brief.

In the district court, SJC moved for summary judgment on Ramsey's retaliation claim by arguing that Ramsey did not request any ADA accommodations and, in any event, SJC terminated her for legitimate, non-discriminatory reasons.

19

ROA 408-410. The district court found that Ramsey filed to respond to SJC's argument and thus granted summary judgment. ROA 1120-1121. Ramsey's cannot resurrect this claim on appeal where she failed to support this claim in the district court. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1. (5th Cir. 2006); *Vela v. City of Houston*, 276 F.3d 659, 670 (5th Cir. 2001). Accordingly, this Court should affirm the dismissal of Ramsey's ADA retaliation claim.

3.    <u>This Court may otherwise affirm the dismissal of Ramsey's retaliation claim based on the record evidence.</u>

Even if this Court considers Ramsey's ADA retaliation claim on the merits, the death knell for Ramsey's claim is the fact that the person who decided to terminate her employment, Dr. Brenda Hellyer, did not know Ramsey had a disability or has requested accommodations for a disability when she (Ramsey) was employed by the College. ROA 665. In her brief, Ramsey claims that the record includes "contradictory evidence" of Dr. Hellyer's knowledge in this regard, but the evidence Ramsey identifies to support her argument do not rebut Dr. Heller's clearly and unequivocal testimony in any manner, which is not surprising since Ramsey failed to take Dr. Hellyer's deposition (or anyone else's deposition). Appellant's Brief at 36-37.

However, to be thorough, SJC addresses false representations Ramsey makes in the facts section of her brief. Specifically on page 16 of her brief, Ramsey argues that Dr. Hellyer's affidavit testimony (averring that she did not know Ramsey had a

20

disability or had requested accommodations) is "false," and that "Hellyer was aware of Ramsey's medical condition and requests for accommodations" before Ramsey's termination. *Id*. at 16. Ramsey cite record pages 990 and 1048 for this proposition, however, the email on page 990 is dated December 10, 2021—*nine days after Dr. Hellyer made the decision to terminate Ramsey on December 1, 2021*. Similarly, the document on page 1048 is dated December 8, 2021—*seven days after Dr. Heller's decision*—and there is no evidence Dr. Hellyer even received this document. Whatever information Ramsey provided to SJC after Dr. Hellyer's decision is irrelevant to what Dr. Hellyer knew at the time she made her decision. Ramsey's failure to confront this issue is independently fatal to her ADA retaliation claim. *See, e.g., Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

### 4.    Ramsey's disability discharge claim.

The district court correctly granted summary judgment on Ramsey's disability discharge claim because, among other things, Ramsey failed to dispute SJC's legitimate, nondiscriminatory reason for terminating her—namely, her performance deficiencies, and Ramsey failed to show pretext. ROA 1115-1120. On appeal, Ramsey argues that she did, in fact show pretext in the district court. Appellant's

Brief at 25-34. As shown below, Ramsey's arguments to not remotely warrant reversal of the district court's decision.

As an initial matter, Ramsey does not dispute on appeal SJC's legitimate, nondiscriminatory reason for terminating her employment—her performance deficiencies. Those deficiencies are specifically set forth in the affidavit of her supervisor, Kam Marvel (ROA 620-622) and the supporting texts, emails, and memos (ROA 632-651, 653-654, 656-659), and Ramsey does not make any effort whatsoever to dispute the same. Ramsey's disability discharge claim should be independently dismissed due to her failure to address, much less confront, this evidence.

Moreover, Ramsey's pretext arguments are frivolous. On page 30 of her brief, Ramsey once again takes issue with Dr. Hellyer's (the decisionmaker) clear and unequivocal affidavit confirming that she did not know Ramsey had a disability or has requested accommodations for a disability when she (Ramsey) was employed by the College. ROA 665. And once again, Ramsey relies exclusively on evidence submitted to Dr. Hellyer *after she had already made the decision to terminate Ramsey's employment*. Appellant's Brief at 30 (citing ROA 735, 990). Ramsey's argument in this regard underscores the fact that her claim was brought in bad faith. There is no evidence to contradict Dr. Hellyer's affidavit, and Ramsey's

characterization of Dr. Hellyer's testimony as "false" by relying on events that happened *after* her termination is sanctionable.

Finally, Ramsey proffers the "cat's paw" theory in a last-ditch effort to save her claim. Appellant's Brief at 32-24. Her argument in this regard is woeful. She claims that her supervisor, Kam Marvel, knew she had a disability, that he recommended Ramsey's termination, and that Dr. Hellyer approved the recommendation—thus making her decision a cat's paw of Marvel's discriminatory animus. *Id*. As the district court correctly found, there is no legal support for the proposition that knowledge of a disability is enough to show discriminatory animus because of that disability. ROA 1119. Indeed, Ramsey's argument would lead to absurd results, as for example in the race discrimination context, mere knowledge of a person's race would equate to discriminatory animus toward that race. There is no evidence Marvel harbored any discriminatory animus toward Ramsey because of a disability. Moreover, the district court correctly found that Ramsey offered no evidence or argument that Marvel exerted leverage or influence over Dr. Hellyer. ROA 1120. This particularly true since the record evidence shows that Marvel made the recommendation to Ms. Del Bello, who make the recommendation to Ms. Ramirez, who made the recommendation to Dr. Hellyer. Ramsey's cat's paw theory finds itself coming and going, and other than proffer up the theory, she has no evidence to prove it.

In sum, SJC fired Ramsey because she was a poor performer, Ramsey does not address the specific performance deficiencies that led to her termination, and her efforts to otherwise show pretext are frivolous.

**B.     The District Court Did Not Err in Granting Summary Judgment on Ramsey's FMLA Claims.**

1.     Ramsey's interference claim.

The district court correctly granted summary judgment on Ramsey's FMLA interference claim because Ramsey failed to identify any summary judgment evidence showing that SJC denied her entitlements under the FMLA. ROA at 1103-04. On appeal, Ramsey argues that she did, in fact, identify such evidence in the district court—namely, "she asserted that SJC terminated her while she was on intermittent leave." Appellant's Brief at 43. While Ramsey made that argument in the district court, her argument was a misrepresentation of the summary judgment record at that time, and it remains a misrepresentation to this Court.

The district court initially (and correctly) found that Ramsey admitted during her deposition that she took all the FMLA leave she needed. ROA. 1103. *Ramsey does not dispute this finding on appeal.* Otherwise, Ramsey's claim that she was terminated "while she was on intermittent leave" is false. The record evidence shows that on September 18, 2021, SJC approved Ramsey for intermittent leave "for 2 to 4 hours per day for appointments, up to 2 times per week, but no more that 2 times per month[,]" through July 1, 2022. ROA 677. There is no evidence in the record that

Ramsey was away from work using intermittent FMLA leave when SJC terminated her employment on December 3, 2021.

Additionally, Ramsey's argument is incorrect as a matter of law. The FMLA and its implementing regulations provide that an employee approved for FMLA leave has no greater benefits, rights or conditions of employment than if the employee had not taken FMLA leave. 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. 825.216(a). Even assuming Ramsey was "on" FMLA leave at the time of her termination (which she was not), that does not mean she was immunized from discipline. Amedee v. Shell Chemical LP-Geismer Plant, 384 F. Supp. 3d 613, 631 (M.D. La. 2019) ("The law is clear that the fact that Plaintiff was on leave when she received her termination letter is not an *ipso facto* interference with FMLA rights. Simply being on FMLA leave did not insulate Plaintiff from being lawfully terminated."). SJC fired Ramsey because of her performance deficiencies, which is perfectly lawful without regard to whether she was "on" FMLA leave or not. *See Grubb v. Southwest Airlines*, 296 Fed. App'x 383, 391 (5th Cir. 2008) (holding that legitimate grounds for termination "extinguished" employee's right to FMLA leave).

Finally, while the district court chose not to reach the prejudice element of Ramsey's FMLA interference claims (ROA 1104 n.3), this Court may affirm summary judgment since Ramsey failed to create a genuine issue of material fact as

to this element of her claim. *See Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). On appeal, Ramsey argues that SJC's termination of her employment prevented her from using intermittent leave after her termination, which she claims was prejudicial. Appellant's Brief at 44. Ramsey's logic is flawed for four reasons.

First, as argued above, SJC lawfully fired Ramsey because of her performance deficiencies, which cannot be prejudicial under any circumstances. Second, Ramsey does not argue that SJC's termination decision itself violated her FMLA rights—just that SJC terminated her—which is insufficient to establish prejudice under the FMLA. See Martin v. Penske Logistics, LLC, 736 F. Supp. 3d 437, 450-51 (N.D. Tex. 2024) (finding genuine issue of material fact as to prejudice element of FMLA interference claim where termination decision was based, in part, on FMLA-protected absences). Third, Ramsey's argument is speculative as she cannot predict that she would have needed to use intermittent FMLA leave in the future. Finally, Ramsey's argument is essentially a repackaged retaliation claim, which is improper. *See Spears v. La. Dep't of Pub. Safety & Corrections*, 2 F. Supp. 3d 873, 878 (M.D. La. 2014) ("The Court finds that the Plaintiff's interference claim is essentially the same as his retaliation claim; therefore, summary judgment shall be granted in favor of the Defendant on Plaintiff's interference claim.").

2.    <u>Ramsey's retaliation claim.</u>

The district court correctly granted summary judgment on Ramsey's FMLA retaliation claim because Ramsey failed to identify any summary judgment evidence showing that SJC's legitimate, non-retaliatory reasons for terminating her employment were pretextual. ROA at 1107-09. In the district court, Ramsey cited a large portion of the "facts" section of her summary judgment response and offered the conclusory statement, "Each time Ramsey went out on FMLA leave, or sought FMLA leave, she was retaliated against and written up." ROA 727. The district court correctly found that Ramsey's approach (essentially, you find it district court) failed to satisfy her burden of demonstrating a genuine issue of material fact. ROA 1108. On appeal, Ramsey doubles down and argues she offered her *en masse* record citation "in an effort to avoid a repeated lengthy recitation of facts," and that the district court erred in failing to sift through the record and find a fact issue. Ramsey is wrong—it's her job to point to specific record evidence to create a fact issue—not the district court's job to do it for her.

Ramsey attempts to excuse her failure by citing to *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268 (5th Cir. 2009). Appellant's Brief at 40. In *CQ*, the parties filed cross-motions for summary judgment, and one party (CQ) cited to argument and evidence in its motion for summary judgment in responding to the other party's (TXU) motion for summary judgment. *Id*. at 273-74. TXU argued that CQ's failure

to attach and cite the evidence in its response to TXU's motion for summary judgment was procedurally defective, and the district court implicitly agreed. *Id*. at 274. The Fifth Circuit disagreed and found that CQ's "cross-cited pages contained argument and citations to the record that unambiguously created the alleged issue of fact." *Id*. at 274. *CQ* is fundamentally distinguishable in at least three respects. First, this case does not involve cross-motions for summary judgment. Second, this case does not present the procedural argument at issue in *CQ*. SJC does not argue (and the district court did not hold) that Ramsey was procedurally barred from referencing another portion of her summary judgment response. Third, the Court in *CQ* found that the referenced portion of the response brief "contained argument and citations to the record that unambiguously created the alleged issue of fact." Here, the *en masse* record citation Ramsey presented in the district court is simply her recitation of certain facts—Ramsey does not cite a single case in that section and does not make a single legal argument in that section. ROA 703-712. The district court's reference to truffle hunting was entirely appropriate (ROA 1108) and remains good law in the Fifth Circuit. *See Johnson v. Collier*, 137 F.4th 376, 383 (5th Cir. 2025) ("We will not truffle hunt for due process violations where the briefing has not unearthed any.").

Just as with her ADA claims, the death knell for Ramsey's FMLA retaliation claim remains the fact that the person who decided to terminate her employment, Dr.

28

Brenda Hellyer, did not know Ramsey had requested or taken FMLA leave when she (Ramsey) was employed by the College. ROA 665. *Ramsey does not address this fact in the FMLA retaliation section of her brief.* Appellant's Brief at 38-42. However, to be thorough, SJC addresses false representations Ramsey makes in the facts section of her brief. Specifically on page 16 of her brief, Ramsey argues that Dr. Hellyer's affidavit testimony (averring that she did not know Ramsey had requested or taken FMLA leave during her employment) is "false," and that "Hellyer was aware of Ramsey's medical condition and requests for accommodations" before Ramsey's termination. *Id*. at 16. Ramsey cite record pages 990 and 1048 for this proposition, however, the email on page 990 is dated December 10, 2021—*nine days after Dr. Hellyer made the decision to terminate Ramsey on December 1, 2021*. Similarly, the document on page 1048 is dated December 8, 2021—*seven days after Dr. Heller's decision*—and there is no evidence Dr. Hellyer even received this document. Whatever information Ramsey provided to SJC after Dr. Hellyer's decision is irrelevant to what Dr. Hellyer knew at the time she made her decision. Ramsey's failure to confront this issue is independently fatal to her FMLA retaliation claim. *See, e.g., Wiseman v. New Breed Logistics, Inc.*, 72 F. Supp. 3d 672, 678 (N.D. Miss. 2014) (dismissing FMLA retaliation claim on summary judgment where decisionmaker did not know of the plaintiff's use of FMLA leave).

29

## CONCLUSION AND PRAYER

Defendant-Appellee San Jacinto College District requests that the Court affirm the April 30, 2025, Final Judgment of the United States District Court for the Southern District of Texas, Houston Division.

Respectfully submitted,

SPALDING NICHOLS LAMP LANGLOIS

*/s/ Paul A. Lamp*
PAUL A. LAMP
State Bar No. 24002443
Federal I.D. 21711
plamp@snll-law.com
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098
Telephone: 713-993-7060
Facsimile: 888-726-8374

**ATTORNEY FOR APPELLEE SJCD**

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and addressed as follows:

Michael Todd Slobin
Dorian Vandenberg-Rodes
Shellist Lazarz Slobin LLP
5373 West Alabama, Suite 600
Houston, Texas 77056
Attorneys for Plaintiff-Appellant

*/s/ Paul A. Lamp*
Attorney for Appellee SJCD

30

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1, this document contains 5144 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, 14-point font for text and 12-point font for footnotes.

/s/ *Paul A. Lamp*
Attorney for Appellee SJC