**No. 25-20195**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

JENNIFER RAMSEY,
*Plaintiff-Appellant*

*v.*

SAN JACINTO COLLEGE DISTRICT,
*Defendant-Appellee*

---

On Appeal from the United States
District Court, Southern District of Texas,
Houston Division, Civil Action No. 4:23-CV-1719,
The Honorable Richard W. Bennett,
United States Magistrate Judge Presiding

---

**REPLY BRIEF OF APPELLANT**

---

> **SHELLIST LAZARZ SLOBIN LLP**
> Michael Todd Slobin
> State Bar No. 24002953
> Dorian Vandenberg-Rodes
> State Bar No. 24088573
> 5373 West Alabama, Suite 600
> Houston, Texas  77056
> (713) 621-2277 (Tel)
> (713) 621-0993 (Fax)
> **COUNSEL FOR
> PLAINTIFF/APPELLANT,
> JENNIFER RAMSEY**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

(1) No. 25-20195, *JENNIFER RAMSEY, Plaintiff-Appellant v. SAN JACINTO COLLEGE DISTRICT, Defendant, Appellee*;

(2) The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.   These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| **Plaintiff-Appellant** | **Defendant-Appellee** |
| --- | --- |
| Jennifer Ramsey | San Jacinto College District |

| **Counsel for Plaintiff-Appellant** | **Counsel for Defendant-Appellee** |
| --- | --- |
| Todd Slobin | Paul A. Lamp |
| Dorian Vandenberg-Rodes | Morgan Beam |
| Shellist Lazarz Slobin LLP | Spalding Nichols Lamp Langlois |

 */s/ Michael Todd Slobin*
Michael Todd Slobin
Attorney of Record for Plaintiff-Appellant,
Jennifer Ramsey

ii

## **TABLE OF CONTENTS**

Certificate of Interested Persons ................................................................................. ii

Table of Contents ................................................................................................... iii

Table of Authorities .................................................................................................v

I.      Introduction........................................................................................................1

II.     Argument .........................................................................................................2

A.      The District Court Erred in Granting Summary Judgment
        on Ramsey's ADA Discrimination Claim...........................................................2

        1.  Ramsey Raised a Genuine Issue of Material Fact
            Regarding Whether SJCs Reason for Termination was
            a Pretext for Discrimination .....................................................................2

        2.  Suspicious Timing, False Statements Regarding "Performance
            Deficiencies," and Disability-Related Discipline Support an
            Inference of Discrimination......................................................................3

        3.  The Demonstrably False Statements in Marvel's Declaration
            Create a Fact Issue Regarding Pretext......................................................8

        4.  Hellyer Knew About Ramsey's Medical Condition and
            Requests for Accommodations When She Affirmed
            Ramsey's Termination .............................................................................10

        5.  Marvel Demonstrated Discriminatory Animus and His Role
            In the Termination Establishes Leverage Under the
            *Cat's Paw* Theory ................................................................................14

B.      The District Court Erred in Granting Summary Judgment
        on Ramsey's ADA Retaliation Claim..............................................................16

1.  Ramsey Preserved Her ADA Retaliation Claim..........................................16

2.  SJC's Repeated Argument That Hellyer Allegedly
    Lacked Knowledge of Ramsey's Disability and
    Requests for Accommodations Fails .......................................................17

C.  The District Court Erred in Granting Summary Judgment
    on Ramsey's FMLA Retaliation Claim ...........................................................19

1.  Ramsey Identified Summary Judgment Evidence Creating
    a Material Fact Issue Regarding Pretext.....................................................19

2.  Hellyer Knew That Ramsey Had Requested and Taken
    FMLA Leave When She Affirmed Ramsey's Termination ......................21

D.  The District Court Erred in Granting Summary Judgment
    on Ramsey's FMLA Interference Claim...........................................................23

III.  Conclusion and Prayer for Relief.........................................................................25

Certificate of Service ...................................................................................................27

Certificate of Compliance ...........................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Black v. North Panola Sch. Dist.*,
　461 F.3d 584 (5th Cir. 2006) ............................................................................ 16

*Caldwell v. KHOU-TV*,
　850 F.3d 237 (5th Cir. 2017) .................................................................. 2, 18, 22

*CQ, Inc. v. TXU Mining Co.*,
　565 F.3d 268 (5th Cir. 2009) ............................................................................ 21

*Eastern Concrete Materials v. Ace American Insurance Co.*,
　948 F.3d 289 (5th Cir. 2020) ...................................................................... 10, 13

*Haire v. Board of Sup'rs of La. State Univ. Agricultural & Mech. Coll.*,
　719 F.3d 356 (5th Cir. 2013) ........................................................................ 2, 8

*Martin v. Penske Logistics, LLC*,
　736 F.Supp.3d 437 (5th Cir. 2024) .................................................................. 24

*Reeves v. Sanderson Plumbing Prods., Inc.*,
　530 U.S. 133 (2000) ........................................................................ 2, 10, 13, 18

*Rhodes v. Guiberson Oil Tools*,
　75 F.3d 989 (5th Cir. 1996 *en banc*)....................................................... 2, 8, 21, 22

*Sandstad v. CB Richard Ellis*,
　309 F.3d 893 (5th Cir. 2002) .................................................................... 2, 8, 22

*Staub v. Proctor Hospital*,
　562 U.S. 411 (2011) .................................................................................... 14, 15

*Stepanischen v. Merchants Despatch Transportation Corp.*,
　722 F.2d 922 (5th Cir. 1983) ...................................................................... 19, 21

*Troice v. Proskauer Rose, L.L.P.*,
   816 F.3d 341 (5th Cir. 2016) ........................................................................ 13, 22

*Vela v. City of Houston*,
   276 F.3d 659 (5th Cir. 2001) ........................................................................ 16

*Way v. Missouri City*,
   133 F.4th 509 (5th Cir. 2025) ........................................................................ 23

## I.    <u>INTRODUCTION</u>

SJC's Brief of Appellee collapses under the weight of its own omissions. It fails to engage with Ramsey's compelling evidence and instead leans on disputed facts, chief among them, whether Brenda Hellyer, Chancellor of SJC, knew of Ramsey's disability, requests for accommodations, and FMLA leave when she approved Ramsey's termination. When the record is viewed, as it must be, in the light most favorable to Ramsey, reversal is not only warranted but required.

SJC ignores the glaring falsehoods in Kam Marvel's declaration and Hellyer's affidavit.  It sidesteps the undeniable truth that Ramsey, an exemplary employee who served SJC for sixteen years without a single disciplinary action, was suddenly targeted after undergoing two brain surgeries within one year and taking protected FMLA leave. SJC refuses to confront what the evidence unmistakably shows: Ramsey was disciplined and ultimately terminated because of her disability, her need for accommodations, and the her associated FMLA leave.

The fundamental error with the district court's decision is that the court improperly viewed the evidence *in the light most favorable to SJC* to grant summary judgment on each of Ramsey's claims.  The district court ignored much of Ramsey's evidence, incorrectly resolved factual disputes in favor of SJC, and it went out of its way to draw inferences in favor of SJC.  This Court should apply the correct standard of review, drawing all reasonable inferences in favor of Ramsey and disregarding all

1

evidence favorable to SJC that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted).

## II.     ARGUMENT

### A. The District Court Erred in Granting Summary Judgment on Ramsey's ADA Discrimination Claim.

#### 1.  Ramsey Raised a Genuine Issue of Material Fact Regarding Whether SJC's Reason for Termination Was a Pretext for Discrimination.

SJC does not challenge Ramsey's prima facie case of disability discrimination and solely contends that Ramsey has failed to show pretext. Appellee's Brief at 21. At the summary judgment stage, Ramsey is not required to prove pretext; she is merely required to produce evidence from which a jury could conclude that SJC's articulated reason is pretextual. *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017). To survive summary judgment, Ramsey need only produce evidence creating a fact issue regarding SJC's discriminatory animus or the falsity of SJC's proffered explanation. *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 897 (5th Cir. 2002). Evidence of the falsity of SJC's explanation, viewed in conjunction with the prima facie case, is sufficient to permit a finding of discrimination without additional evidence. *Id.*; *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996 *en banc*); *Haire v. Board of Sup'rs of La. State Univ. Agricultural & Mech. Coll.*, 719 F.3d 356, 365 n. 10 (5th Cir. 2013) ("[e]vidence demonstrating that the employer's

2

explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination *even without further evidence of defendant's true motive*." (italics in original).

### 2. Suspicious Timing, False Statements Regarding "Performance Deficiencies," and Disability-Related Discipline Support an Inference of Discrimination.

SJC contends that Ramsey fails to dispute on appeal SJC's alleged legitimate, nondiscriminatory reason for terminating her employment, "performance deficiencies." This is patently false. Appellant's Brief at 27-29. Ramsey has shown that she was a stellar performer at SJC for *sixteen years,* with exceptional performance evaluations, four promotions, and various recognition awards, even during the year that she was terminated. ROA.729. The only thing that changed for Ramsey was that she had two brain surgeries in less than a year due to her medical condition (with another brain surgery to be conducted in the future), which impacted her health in many ways – all of which she communicated to SJC leadership prior to her termination. ROA.729-736. Ramsey was an exempt managerial employee and was never written up for "tardies" or anything else during her long tenure with SJC until January 15, 2021, *eleven days after her return to work from her first brain surgery*. ROA.729, 731. From that point forward, it became clear that the fix was in. SJC embarked upon a sudden and unprecedented campaign against Ramsey to paper her file with documentation of "performance deficiencies" that had never been

issues during her sixteen-year career at SJC, and then terminate her, under the backdrop of a positive performance review the year of her termination.

In the first "Letter of Expectations," issued by Ramsey's direct supervisor, Gabriel Rodriguez ("Rodriguez"), on January 15, 2021, eleven days after she returned from her first brain surgery, Rodriguez disciplined Ramsey for being late "many times over the past several months," despite the fact that Ramsey had been out on FMLA leave for brain surgery from November 18, 2020 until she returned from FMLA leave on January 4, 2021.  Appellant's Brief at 6-7, 23, 27-29; ROA.731, 562. Ramsey disputed the Letter of Expectations, and emailed Ronald Sanchez ("Sanchez"), who became her direct supervisor in February 2021, to formally dispute Rodriguez's Letter of Expectations.  ROA.731.  Sanchez never received a response from Sanchez regarding her request for clarification or modification of Rodriguez's Letter.  ROA.731.  <u>SJC fails to address the suspicious timing of the January 15, 2021, Letter of Expectations and the false "deficiencies" cited in Rodriguez's Letter.</u>  Furthermore, SJC's Notice of Termination shows that SJC attempted to justify the decision to terminate Ramsey's employment based on these false "deficiencies." ROA.731, 928, 988.

By March of 2021, Ramsey's brain was leaking, and she was having issues with her hearing and vision.  ROA.731.  Ramsey communicated her medical issues and need for a second brain surgery to SJC leadership, including Sanchez and Vicki

4

Del Bello, Vice President Human Resources. ROA.731. On the morning of June 3, 2021, six days after SJC initially denied Ramsey additional FMLA leave for her second brain surgery, Ramsey emailed Sanchez to tell him that she had mismanaged her time and was running late, a result of her medical condition. ROA.732. That same day, on June 3, 2021, Sanchez issued Ramsey's second Corrective Action Notice, requiring her to "improve [her] performance and behavior immediately." ROA.255, 731. In this notice, Sanchez also disciplined Ramsey for being late with her leave report for May 2021, which Ramsey told Sanchez she had forgotten to submit due to her health issues. ROA.955-956 (Ramsey Dep. 88:19-25, 89:1-19). SJC fails to address the suspicious timing of the June 3, 2021 Corrective Action Notice or that Sanchez reprimanded Ramsey for "deficiencies" directly related to her disability during a time when she was struggling with her medical condition and requesting (and being denied) FMLA leave for brain surgery. Furthermore, SJC's Notice of Termination shows that SJC attempted to justify the decision to terminate Ramsey's employment based on these "deficiencies" directly related to her disability. ROA.988.

On November 4, 2021, Ramsey's subsequent direct supervisor, Kam Marvel ("Marvel"), issued a "Final Corrective Action Notice," in which Marvel, with knowledge of Ramsey's medical condition, disciplined Ramsey for speaking in "an elevated tone." ROA.734, 1051. Marvel further disciplined Ramsey for a statement

attributed to Ramsey, "Why do I have to accommodate everyone?  Nobody accommodates me."  ROA.734, 930, 1051.  Marvel's self-serving documentation omitted what Ramsey had expressed just moments before: "I have an issue with my hearing," attempting to explain why her voice was raised.  ROA.734, 930, 1051.  SJC fails to address the fact that Marvel reprimanded Ramsey for "deficiencies" directly related to her disability in his November 4, 2021, Corrective Action Notice, *less than one month* before he recommended her termination.

On December 1, 2021, *twelve days* after Ramsey requested accommodations from Marvel and *nine days* after Ramsey complained to Marvel about discrimination, Marvel recommended Ramsey's termination.  SJC fails to address the suspicious timing of Marvel's recommendation to terminate Ramsey.

SJC cannot overcome the overwhelming evidence of pretext in this case.  In an attempt to deflect from the shortcomings in its defense, SJC directs the Court to a running tab Marvel apparently kept of Ramsey's late arrivals from September 27, 2021, through November 11, 2021, after Ramsey returned to work from her second brain surgery and was on intermittent FMLA leave.[1]  Appellee's Brief at 11.  Ramsey was in constant communication with Marvel in September, October, and November 2021 about her existing medical condition, her disability, and recovery from her

---

[1] Notably, Marvel did not include this list of late arrivals in his Notice of Termination. ROA.988-989.

second brain surgery.  ROA.734.  For example, on October 7, 2021, Ramsey wrote Marvel an email while suffering from her medical condition and apologized to him for being late, explaining, *"I've been attempting to compose this message for 42 minutes.  I have woken with a migraine this morning.*  ROA.733-734.  Such knowledge should have prompted empathy or a dialogue about what accommodations SJC could provide to assist Ramsey as she struggled with her medical condition.  However, instead of offering Ramsey accommodations, Marvel kept a running tab of Ramsey's late arrivals (even by a matter of five to ten minutes), with the knowledge that Ramsey had a medical condition for which she requested accommodations and had approved intermittent FMLA leave. ROA. 732-734,964, ROA.988 (Ramsey Dep. 122:17-25).  The text exchanges between Marvel and Ramsey cited by SJC in its brief (at page 11) reflect, more than anything, Ramsey's efforts to notify Marvel of variations in her arrival times and Marvel's tacit approval of late arrivals.  ROA.636-651.  In any event, Ramsey's precise arrival time as an *exempt employee* had never been an issue during her sixteen-year tenure at SJC prior to her two brain surgeries, and it should not have been one after.  ROA.731.[2]

---

[2] Ramsey has also put forth evidence that upon her return from FMLA leave after her second brain surgery on September 7, 2021, she encountered significant issues with the Cornerstone Learning Management System, which was in a disorganized state and was not attributable to Ramsey. ROA.733, 915.  Errors in the Full-Time and Part-Time Faculty Annual Compliance Curriculum system deployments required her immediate attention.  ROA.733.  Additionally, leadership requested urgent reporting on faculty transcripts for curriculum compliance, further complicating her workload.  ROA.733.  As leadership continued to prioritize tasks in an ad-hoc manner, many of Ramsey's other duties were postponed, causing her to miss expected deadlines.  ROA.733.

The disciplinary notices SJC relies upon are marked by suspicious timing, demonstrably false statements, self-serving omissions, and a clear connection to Ramsey's disability—all of which support an inference of pretext. *Sandstad*, 309 F.3d at 897; *Rhodes*, 75 F.3d at 994; *Haire*, 719 F.3d at 365 n. 10.

### 3. The Demonstrably False Statements in Marvel's Declaration Create a Fact Issue Regarding Pretext

SJC makes no effort on appeal to deny or even explain Marvel's false statement in his declaration that he did not know Ramsey had a disability or that she had requested accommodations for a disability when he recommended her termination.  ROA.928.  There is substantial evidence in the record directly contradicting Marvel's sworn testimony, and SJC remains silent on the inconsistencies in his statement.  This significant fact issue alone should have prevented summary judgment. Ramsey explicitly told Marvel about her disability on a number of occasions via email, text messaging, and in-person conversations in July, September, October, and November 2021, and she requested accommodations from him.  ROA.732-735.  Moreover, Marvel's own handwritten notes from his November 21, 2021 meeting with Ramsey (nine days before he recommended her termination), clearly state that Ramsey told him, ***"I had a brain injury and [was]***

---

Ramsey raised concerns about the overwhelming and conflicting priorities (again asking for help), and Marvel told her that her job duties and workload were being evaluated.  ROA.733, 915.  He then disciplined Ramsey for missing deadlines despite the fact that she was attempting to fix everything that had been corrupted by others while she was out on leave.  ROA.988.

***written up 3 times*** ” and ***“8 months no empathy***,” ***“Talked with HR professional/other professionals and I have a case with EEOC and TWC,”*** and further, ***“this is wrong.”*** ROA.983.   Furthermore, Marvel clearly stated in his November 19, 2021, email to Ramsey that Ramsey asked him for an accommodation. ROA.931-932.

Marvel's claim that he had no knowledge of Ramsey's disability or her accommodation requests at the time he recommended her termination is not merely inaccurate, it is demonstrably false and self-serving. His own handwritten notes and emails directly contradict this assertion, exposing his statement as a deliberate attempt to mislead. This blatant falsehood calls into question the credibility of his entire declaration, including his claim that he recommended Ramsey's termination solely because of "performance deficiencies." ROA.929.  It defies logic and honesty to suggest that Marvel "did not consider Ramsey's time away from work due to doctor's appointments or personal health issues" when his own records prove he was fully aware of them.  ROA.929.  His effort to rewrite the truth after the fact underscores a clear attempt to conceal the real, discriminatory motive behind Ramsey's termination. ROA.928-929.   SJC offers no evidence to rebut the demonstrable fact that Marvel's sworn testimony in his declaration is false.   The district court erred in giving undue credence to Marvel's declaration while disregarding Ramsey's evidence of pretext, and this Court should disregard Marvel's

9

false statements regarding his lack of knowledge of Ramsey's disability or requests for accommodations, if not all of Marvel's testimony regarding his decision to terminate Ramsey. *Reeves*, 530 U.S. at 150 (2000); *Eastern Concrete Materials v. Ace American Insurance Co.*, 948 F.3d 289, 295 (5th Cir. 2020) (at the summary judgment stage, "[the court] must accept the plaintiff's uncontroverted allegations, and resolve in [her] favor all conflicts between the facts contained in the parties' affidavits and other documentation").

### 4. Hellyer Knew About Ramsey's Medical Condition and Requests for Accommodations When She Affirmed Ramsey's Termination

SJC further attempts to escape liability by relying on the following false, or at best, misleading statement in Hellyer's affidavit: "At the time I approved the recommendation to terminate Ms. Ramsey's employment, I did not know she had a disability, and I did not know she had requested accommodations from the College for a disability…." ROA.986-987. Ramsey has put forth uncontroverted evidence that *Hellyer was aware of Ramsey's medical condition and requests for accommodations prior to affirming Ramsey's termination*. ROA.714, 724; Appellant's Brief at 15-16, 30-32, 36-37. Per Hellyer's intentionally misleading affidavit, SJC fixates on December 1, 2021, as the date Hellyer allegedly made the decision to approve Marvel's recommendation to terminate Ramsey. ROA.986-987. However, Ramsey bcc'ed Hellyer on her termination appeal email on December 10, 2021, which explicitly detailed Ramsey's medical condition, two brain surgeries,

10

noted her request for accommodations, and noted the fact that she had no write-ups in her sixteen-year employment with SJC prior to 2021, after her first brain surgery. ROA.735, 990. SJC does not dispute that Hellyer received this email. Appellee's Brief at 21.

SJC's assertion that Ramsey's appeal email is irrelevant because it is dated after December 1, 2021 ignores the material fact that SJC maintained an appeals process, which Hellyer utilized to subsequently *uphold the termination*, as evidenced by Hellyer's January 13, 2022 letter to Ramsey. ROA.735, 991. If Hellyer's decision on December 1, 2021, was truly the final, irreversible decision, Hellyer's subsequent review of the termination on appeal would have been pointless. The fact is that Hellyer affirmed the termination decision *after* receiving Ramsey's detailed email about her medical condition. ROA.990, 991. Hellyer knew Ramsey had a **double brain herniation in the mastoid cavity**. ROA.990. Hellyer knew Ramsey had her **first surgery in November 2020**, and she underwent her **second brain surgery in July 2021 for a CSF leak**. ROA.990. Hellyer knew Ramsey had a variety of symptoms that accompany these conditions. ROA.990. Hellyer knew that Ramsey continued to feel the ramifications (of the brain surgeries). ROA.990. Hellyer knew that Ramsey was asking for help. ROA.990. Hellyer was fully aware of Ramsey's medical conditions, yet SJC attempts to mislead this Court by fabricating an inaccurate timeline to bolster its defense. Despite this undisputed

knowledge, Hellyer nevertheless claimed under oath in her affidavit that she had no knowledge of Ramsey's medical issues. ROA.986–987. Such a statement is not only demonstrably false but underscores SJC's broader effort to distort the record and evade accountability.

In a desperate attempt to avoid exposing further false and misleading statements in Hellyer's affidavit (namely, Hellyer's alleged lack of knowledge that Ramsey requested and took FMLA leave while employed at SJC, discussed *infra* in Section II(C)(2)), SJC argues for the first time on appeal that there is no evidence Hellyer received Ramsey's December 8, 2021 formal request for a review of her Notice of Termination, an attachment to Ramsey's December 10, 2021 appeal email. Appellee's Brief at 29; ROA.735, 1048-1049.  In this December 8, 2021, request for review, Ramsey detailed the inaccurate write-ups she received that led to her termination, including Rodriguez's false statements in his January 15, 2021, Letter of Expectations that Ramsey was late to work "many times over the past several months" during the time that she was on FMLA leave. ROA.1048. In addition, Ramsey made clear that she made every effort to notify her supervisors as soon as she anticipated a late arrival to work, but there were times when prior notification was difficult due to the symptoms of her diagnosed condition.  ROA.1048.

SJC's contention that Hellyer *might* not have received this document or know of its contents despite Hellyer's January 13, 2022 letter to Ramsey affirming the

termination decision after a "thorough review" of the matter is disingenuous, logically flawed, and waived because it was not raised in the district court when Hellyer had every opportunity to affirmatively state that she did not receive this document. *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 349 (5th Cir. 2016) (argument raised by appellee for the first time on appeal is waived); *Reeves*, 530 U.S. at 151 (the court "must disregard all evidence favorable to the moving party that the jury is not required to believe").

Like Marvel's false statements, the false, or at best misleading statements in Hellyer's affidavit regarding her alleged lack of knowledge that Ramsey had a disability, requested accommodations, or requested or took FMLA leave call into question the veracity of her entire affidavit, including her assertion that she approved the termination solely due to "performance deficiencies." ROA.986-987. The district court again erred in giving undue credence to Hellyer's affidavit while disregarding Ramsey's evidence of pretext. This Court should presume Hellyer's knowledge of Ramsey's disability, requested accommodations, and FMLA leave at the time she made the decision to affirm Ramsey's termination. *Reeves*, 530 U.S. at 150 (2000); *Eastern Concrete Materials*, 948 F.3d at 295. At the very least, Hellyer's testimony regarding her lack of knowledge regarding Ramsey's disability, request for accommodations, and FMLA leave creates a material fact issue regarding pretext.

13

### 5. Marvel Demonstrated Discriminatory Animus and His Role in the Termination Establishes Leverage under the *Cat's Paw* Theory

SJC mischaracterizes Ramsey's "Cat's Paw" theory and then describes it as "woeful," arguing that "there is no legal support for the proposition that knowledge of a disability is enough to show discriminatory animus because of that disability." Appellee's Brief at 23. However, Ramsey's argument is that Marvel not only had knowledge of her disability and requests for accommodation, but he also recommended her termination **twelve days** after she requested an accommodation from him and **nine days** after she complained to him of disability discrimination. ROA.724-725, 734-735, 931-932, 983. This sequence of events, particularly when viewed in the light most favorable to Ramsey, strongly suggests a discriminatory animus directly tied to her disability, requests for accommodation, and her complaint of discrimination. SJC does not address Ramsey's argument that a jury could reasonably infer from the timing of events that Marvel's animus tainted the decision-making process, making his recommendation the proximate cause of Ramsey's termination. *Staub v. Proctor Hospital*, 562 U.S. 411 422 (2011).

SJC further contends that Ramsey offered no evidence or argument that Marvel exerted leverage or influence over Hellyer. Appellee's Brief at 23. However, nothing could be further from the truth. Ramsey offered significant evidence that Marvel exercised considerable leverage over the termination decision because: (1) he made the recommendation to terminate Ramsey; (2) he issued the Final

14

Corrective Action Notice and Notice of Termination to Ramsey; and (3) Del Bello, Ramirez, and Hellyer relied upon his recommendation. ROA.712-713, 725, 928, 984-986. Marvel even states in his declaration that, "[he] recommended the termination of Ms. Ramsey's employment," "[his] recommendation was approved," and "on December 3, 2021, [he] issued Ms. Ramsey a termination letter setting forth the grounds for her termination." ROA.928. The record evidence demonstrates that Marvel *did* exert leverage and influence over Hellyer in the termination decision, and Hellyer merely acted as a rubber stamp. *Staub*, 562 U.S. at 422. A jury could reasonably infer that Marvel's discriminatory animus was the proximate cause of Ramsey's termination because his recommendation, which he made only days after Ramsey complained to him about discrimination and requested accommodations, is the direct foundation upon which all subsequent approvals rested. *Id*. SJC's complex chain of approval argument does not negate Marvel's role as the self-proclaimed source of the recommendation that Hellyer approved. ROA.928. Simply put, SJC's attempt to distance itself from Marvel's influence fails because the evidence shows that his biased recommendation was not merely a factor in the decision, it was the decision.

15

**B. The District Court Erred in Granting Summary Judgment on Ramsey's ADA Retaliation Claim.**

**1. Ramsey Preserved Her ADA Retaliation Claim.**

SJC does not confront Ramsey's evidence of retaliation under the ADA and relies on authority that is distinguishable from this case to argue for the first time on appeal that Ramsey abandoned her ADA retaliation claim in the district court. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584 (5th Cir. 2006), *Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001). In *Black*, the court held that the plaintiff abandoned a "retaliatory abandonment" claim because she failed to pursue the claim beyond her complaint and failed to defend the claim in both responses to the defendant's motion to dismiss. *Black*, 461 F.3d at n.1. In *Vela* (which the district court also cited in finding that Ramsey failed to brief her ADA retaliation claim), the court held that the defendant abandoned its limitations defense because it only vaguely included the defense in its Original Answer, and there was a "complete absence of the issue in all subsequent documents filed with the district court." ROA.1121; *Vela*, 276 F.3d 659, 678-79 (noting Fifth Circuit precedent in which a plaintiff was held to have abandoned its theories of successorship liability and indemnity liability because plaintiff never mentioned before the trial court "a single fact that would trigger a genuine issue on these theories").

It is undisputed that Ramsey asserted an ADA retaliation claim in her First Amended Complaint, and unlike the parties in *Black* and *Vela*, Ramsey offered over

16

five pages of evidence and arguments in her Response to SJC's First Amended Motion for Summary Judgment supporting her claim, which the district court wrongly failed to consider. ROA.720-727, 1121. Ramsey explicitly argued in her Response to SJC's First Amended Motion for Summary Judgment that she requested accommodations, that SJC terminated her within days of her complaint of discrimination and requests for accommodations from Marvel, and she established pretext through evidence that SJC's alleged non-retaliatory reason for her termination was false and motivated by a retaliatory animus. ROA.720-726. Ramsey did not abandon her ADA retaliation claim, she spent significant time providing the details and arguments to the court. Furthermore, Ramsey established a prima facie case of retaliation and a material fact issue regarding pretext, precluding summary judgment on this claim. *See* Appellant's Brief at 34-37.

**2. SJCs Repeated Argument That Hellyer Allegedly Lacked Knowledge of Ramsey's Disability and Requests for Accommodations Fails**

SJC's sole argument on the merits of Ramsey's ADA retaliation claim is the same argument it uses throughout its brief: Hellyer was allegedly unaware that Ramsey had a disability or requested accommodations for a disability when she approved Marvel's decision to terminate Ramsey on December 1, 2021. Appellee's Brief at 20-21. As discussed *supra* in Section II(A)(4), SJC fails to address the fact that Hellyer's final approval of Marvel's termination recommendation did not occur

17

until after Ramsey's appeal email on December 10, 2021, which explicitly detailed Ramsey's medical condition and two brain surgeries, and noted her request for accommodations and the fact that she had no write-ups prior to 2021 after her first brain surgery. ROA.735, 990. Hellyer upheld the termination decision on January 13, 2022, with full knowledge of Ramsey's disability and request for accommodations, making her sworn testimony that she had no knowledge of Ramsey's disability and request for accommodations at the time she approved the termination decision misleading at best. ROA. 735, 990, 986-987.

Furthermore, as discussed *supra* in Section II(A)(4), SJC's new, and completely out of thin air suggestion, that Hellyer may not have received Ramsey's December 8, 2021 formal request for a review of her Notice of Termination, with no supporting evidence of that fact, is improper because all factual inferences must be viewed in the light most favorable to Ramsey at the summary judgment stage. ROA.1048. *Reeves*, 530 U.S. at 150; *Caldwell*, 850 F.3d at 241. At this point, SJC will create any version of the facts, whether they have any basis in truth, if it believes it will help support its defense. Nevertheless, Ramsey established a prima facie case of retaliation under the ADA and created a material issue of fact regarding pretext. *See* Appellant's Brief at 34-37. The district court's failure to dismiss Ramsey's retaliation claim without considering any of her evidence or analyzing the claim under the applicable burden-shifting framework was legal error and warrants

18

reversal. *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 930 (5th Cir. 1983).

### C. The District Court Erred in Granting Summary Judgment on Ramsey's FMLA Retaliation Claim

#### 1. Ramsey Identified Summary Judgment Evidence Creating a Material Fact Regarding Pretext

SJC attempts to argue that Ramsey failed to identify any summary judgment evidence showing that SJC's legitimate, non-retaliatory reasons for terminating her employment are pretextual. Appellee's Brief at 27. Even a cursory look at the breadth of evidence Ramsey cited in her Response to SJC's First Amended Motion for Summary Judgment reveals that this is not true. ROA.727, 703-712. As fully discussed at pages 41-42 of Appellant's Brief, the summary judgment evidence Ramsey identified in her Response reflects a pattern of disciplinary actions that strongly suggests falsity and retaliatory animus, including:

- Ramsey's first write-up in sixteen years came just eleven days after returning from her first FMLA leave for brain surgery and included Rodriguez's false statements regarding her alleged tardiness while she was on approved FMLA leave. ROA.704-705, 731, 562.

- The June 3, 2021 Corrective Action Notice issued by Sanchez came six days after SJC denied Ramsey's request for additional FMLA leave and included reprimands related to her medical condition. ROA.255-256, 731-732.

- The November 4, 2021 Final Corrective Action Notice issued by Marvel came approximately one month after SJC revised Ramsey's FMLA Designation Notice adding additional leave time for migraines, included reprimands directly related to her medical condition and omitted Ramsey's critical statement that she raised her voice due to issues with her hearing. ROA.923-925.

- The decision to terminate Ramsey was made by Marvel on December 1, 2021, less than two months after Ramsey's FMLA request for intermittent FMLA leave was revised and approved for additional leave for migraines, and less than three months after Ramsey had been approved for FMLA leave retroactive from June 28, 2021 through September 7, 2021, and for intermittent FMLA leave going forward through July 1, 2022. ROA.727.

Faced with this compelling evidence of FMLA retaliation, SJC's response is to urge this Court to make the same mistake the district court made – to disregard it. SJC argues that the district court correctly ignored *all* of Ramsey's evidence of pretext because she cross-referenced particular sections of the factual background in her Response (which had clear headings, noting SJC's retaliatory behavior) rather than repeating a lengthy recitation of facts in the argument section of the Response. Appellee's Brief at 27-28. SJC goes to great lengths to distinguish a Fifth Circuit case Ramsey cites in her Brief to support her argument that the district court erred

in ignoring all of her evidence. *See CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 273 (5th Cir. 2009) (holding that the district court erred in refusing to consider nonmovant's cited evidence where nonmovant's response brief alleged that there was a material issue of fact and supported this allegation with a targeted cross-citation of four pages of its own motion). However, SJC's argument that *CQ* involves cross motions for summary judgment in contrast to the instant case, only bolsters Ramsey's position. Ramsey's cross references to clearly organized evidence in the factual background of her Response to SJC's Motion for Summary Judgment (versus a cross-citation to another document entirely) should have been reviewed and considered by the district court. *CQ,* 565 F.3d at 274.

The district court erred in ignoring every piece of evidence Ramsey identified as pretext, particularly in light of the fact that the court could have relied *on all the evidence in the record* to draw an inference of discrimination. *Rhodes*, 75 F.3d at 994; *Stepanischen*, 722 F.2d at 930. Accordingly, summary judgment on Ramsey's FMLA retaliation claim should be reversed.

### 2. Hellyer Knew That Ramsey Had Requested and Taken FMLA Leave When She Affirmed Ramsey's Termination

Once again, SJC relies on Hellyer's false affidavit for its sole argument on the merits of Ramsey's FMLA retaliation claim, alleging that Hellyer had no knowledge that Ramsey had requested or taken FMLA leave. Hellyer specifically states in her affidavit: "At the time I approved the recommendation to terminate Ms. Ramsey's

21

employment, I did not know she had requested or taken FMLA leave while she was employed by the College." ROA.987, Appellee's Brief at 29. However, Ramsey bcc'ed Hellyer on her termination appeal email on December 10, 2021, which had as an attachment a formal request for a review of her Notice of Termination, dated December 8, 2021. ROA.735, 990, 1048. In this document, Ramsey detailed the inaccurate write-ups she received that led to her termination, including Rodriguez's false statements in his January 15, 2021 Letter of Expectations that Ramsey was late to work "many times over the past several months." Ramsey specified in the document, "*my first surgery was on November 18, 2020. I was on FMLA leave until after the holidays, returning on January 4, 2021*." ROA.1048. As discussed *supra* in Sections II(A)(4) and Section II(B)(2), Hellyer was aware that Ramsey had requested or taken FMLA leave at the time she affirmed the termination. ROA.735, 990, 1048. Furthermore, SJC has waived any argument that Hellyer did not receive this document, and factual inferences regarding Hellyer's knowledge must be viewed in the light most favorable to Ramsey. *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 349 (5th Cir. 2016); *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017). The false statements in Hellyer's affidavit regarding her alleged lack of knowledge that Ramsey had taken FMLA create a fact issue regarding pretext. *Sandstad*, 309 F.3d at 897; *Rhodes*, 75 F.3d at 994 (when evidence of the falsity of the employer's reason is viewed in conjunction with the *prima facie* case, such

22

evidence "will often, perhaps usually, permit a finding of discrimination without additional evidence").

Even if SJC continues to claim that Hellyer's alleged lack of knowledge of Ramsey's FMLA leave shields the College from liability, it is undisputed that Marvel had knowledge of Ramsey's FMLA leave, and his discriminatory animus can be imputed to Hellyer under the *Cat's Paw* theory.  ROA.926, Appellant's Brief at 32-34, 42.  *See Way v. Missouri City*, 133 F.4th 509, 525-27 (5th Cir. 2025) (reversing summary judgment for employer on plaintiff's FMLA retaliation claim under the "cat's paw" theory of liability because termination decision resulted from supervisor's action and formal decisionmaker merely acted as a rubber stamp).

## D. The District Court Erred in Granting Summary Judgment on Ramsey's FMLA Interference Claim

SJC misstates and downplays the intermittent FMLA leave for which Ramsey was approved at the time of her termination.  Appellee's Brief at 24.  On September 18, 2021, Ramsey was approved for "**2 to 4 hours per day for appointments, up to 2 times per week, but no more than 2 times per month… through July 1, 2022**."  ROA.733.  On September 21, 2021, Ramsey emailed Marvel to notify him that she would be late to work due to a migraine.  ROA.733.  On October 7, 2021, Ramsey emailed Marvel to apologize for being late again explaining, "*I've been attempting to compose this message for 42 minutes.  I have woken with a migraine this morning.*  ROA.733.  That same day, October 7, 2021, SJC revised Ramsey's

23

intermittent leave to include "**up to two episodes per month, 4 to 8 hours per episode, for migraine flare ups**."  ROA.734, 923.  Absent any legal authority, SJC contends that Ramsey's FMLA interference claim is flawed because Ramsey's future use of FMLA leave was "speculative."  Appellee's Brief at 26.  The record evidence suggests otherwise.  Ramsey's struggles with her medical condition continued through her termination.  ROA.734-735.  However, even if they had not, the very purpose of intermittent leave is to protect employees whose medical conditions require intermittent or unforeseeable absences.  While SJC approved Ramsey to use intermittent leave, her termination prevented her from doing so and denied her the future benefits of the approved leave.

SJC also misstates Ramsey's FMLA interference argument and accuses Ramsey of misrepresenting her FMLA status by asserting that she was on intermittent leave at the time of her termination.  Appellee's Brief at 24.  Ramsey has not misrepresented her FMLA status; SJC simply misunderstands the semantics of FMLA leave.  Ramsey did not have a doctor's appointment or a migraine on the date of her termination for which she needed to use intermittent FMLA leave.  However, Ramsey was approved to be on intermittent leave through July 1, 2022, and SJC's unlawful termination of her employment interfered with her entitlement to that FMLA leave.  ROA.923.  *See Martin v. Penske Logistics, LLC*, 736 F.Supp.3d 437, 448 (5th Cir. 2024).  It defies logic that Ramsey would be required to have a

doctor's appointment or experience a migraine on the day of her termination in order to bring an FMLA interference claim based on that termination.

SJC further asserts that Ramsey's argument is incorrect as a matter of law because Ramsey was not immunized from discipline while on FMLA. Appellee's Brief at 25. Ramsey does not argue that she was immunized from discipline. Ramsey's position is that she was unlawfully terminated by SJC while on intermittent FMLA leave, which clearly prejudiced her and denied her the future benefits of her approved leave. Ramsey offered substantial evidence that SJC's proffered reason for Ramsey's termination was a pretext for discrimination and retaliation through both the timing of her disciplinary notices and the timing of her termination. Appellant's Brief at 41-42. The district court erred in ignoring Ramsey's evidence and argument on her FMLA interference claim, and summary judgment should be reversed.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff-Appellant Jennifer Ramsey respectfully requests that this Honorable Court reverse the district court's Order granting summary judgment and dismissing her claims, and remand the case for a jury trial on the merits of her ADA discrimination, ADA retaliation, FMLA retaliation, and FMLA interference claims.

Respectfully submitted,

**SHELLIST LAZARZ SLOBIN LLP**

*/s/ Michael Todd Slobin*
Michael Todd Slobin
State Bar No. 24002953
tslobin@eeoc.net
Dorian Vandenberg-Rodes
State Bar No. 24088573
drodes@eeoc.net
5373 West Alabama, Suite 600
Houston, Texas  77056
(713) 621-2277 (Tel)
(713) 621-0993 (Fax)

26

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been served upon

counsel for Defendant as identified below through the Court's electronic filing

system as follows:

Paul A. Lamp
Morgan Beam
Spalding Nichols Lamp Langlois
3700 Buffalo Speedway, Suite 500
Houston, Texas  77098
Telephone:  713-993-7060
Facsimile:  888-726-8374
Attorney for Defendant, SJC

Houston, Texas, this 22nd day of October, 2025.

*/s/ Michael Todd Slobin*
Michael Todd Slobin
Attorney for Plaintiff-Appellant,
Jennifer Ramsey

27

## **CERTIFICATE OF COMPLIANCE**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,762 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2019 in Times New Roman 14 point font for text and 12 point font for footnotes.

*/s/ Michael Todd Slobin*
Michael Todd Slobin
Attorney for Plaintiff-Appellant,
Jennifer Ramsey

Dated:  October 22, 2025

28